Jones v. Thomas.

---

HARRY T. JONES V. JOHN J. THOMAS, APPELLANT: JENNIE
LOWLEY, ADMINISTRATRIX, ET AL., APPELLEES.

FILED JULY 20, 1921.  No. 20727.

1. **Attorney and Client:** CONTINGENT FEES: DISTRIBUTION.  Where several attorneys engage in the prosecution of litigation for a contingent fee, in the absence of any other agreement, they will

Jones v. Thomas.

be held, upon the successful result of the suit, to share equally in the distribution of the fee.

2. ———: ———: ———. But this principle may be varied by a subsequent agreement between the parties, and where it is afterwards agreed between counsel that one of them shall take no further steps in the case, and that another shall receive extra compensation for carrying on the litigation, the latter is entitled to a reasonable sum for such additional services, and the former is only entitled to the reasonable value of his services up to the time of the agreement as measured by the ultimate amount of the fee realized.

APPEAL from the district court for Seward county: EDWARD E. GOOD and GEORGE F. CORCORAN, JUDGES. Affirmed as modified.

Benjamin F. Good, E. A. Coufal, Thomas, Vail & Stoner, R. R. Schick, H. D. Landis and Stewart, Perry & Stewart, for appellant.

Jacob Fawcett, contra.

Heard before MORRISSEY, C.J., ALDRICH, DAY, DEAN, FLANSBURG, LETTON and ROSE, JJ.

PER CURIAM.

This appeal is concerned mainly with a controversy between attorneys with respect to the division of fees.

The Capital National Bank of Lincoln failed in 1893. Afterwards certain actions were begun by different creditors of the bank against the directors, seeking a recovery from them for neglect of duty, violation of the national bank act, and other wrongful acts committed by them in their official capacity. The actions were begun in 1895, the litigating creditors being the Jones National Bank, the Bank of Staplehurst, the Utica Bank, Thomas Bailey, and Isaac Holt. The firm of Biggs & Thomas were attorneys for the Jones National Bank and the Bank of Staplehurst. The firms of Pound & Burr, and Norval Brothers & Lowley represented the other creditors named. The contract between the several attorneys and their clients provided for a contingent fee of one-third of the

gross receipts.  For some years the attorneys each aided
and assisted the others in the legal work and in the gen-
eral prosecution of the actions, except as hereinafter
mentioned.  There is a conflict as to whether a specific
agreement was made as to this, but the direct evidence,
the course of conduct of these attorneys during a long
series of years, the signing of their names to papers and
briefs and legal documents, and their appearance in the
cases of other than their nominal clients, all convince us
that the several cases were prosecuted by them as a joint
adventure.  Comparatively early in the litigation recov-
ery was had of over $20,000 collected from Stuart, one of
the directors.  The suits proceeded as to the others.
Many vicissitudes occurred in the litigation during the
long series of years.  Finally a judgment for plaintiffs
was obtained in the district court for Seward county,
which was afterwards reversed by this court, following,
as the court thought, former decisions of the supreme
court of the United States.  *Jones Nat. Bank v. Yates,*
93 Neb. 121.  Afterwards the judgment of this court
was reversed by the supreme court of the United States,
240 U. S. 541, and the cause remanded, with directions to
affirm the judgment of the district court, which was done.
Afterwards all the judgments were sold to one Mullen for
$95,000.  This was paid to Harry T. Jones as trustee for
the interested parties.  Jones filed a bill of interpleader,
asking the court to apportion the amount due to each of
the attorneys.  The trial court held that the proceeds of
the Stuart judgments should be divided in four equal
parts, of which Burr is entitled to one-fourth, Thomas one-
fourth, Norval Brothers one-fourth, and the estate of
George W. Lowley one-fourth.  The court also found that,
after the reversal of the judgment in this court, agree-
ments were made between Burr and Thomas, and between
Norval Brothers and Thomas, with the consent of the
clients, that Thomas should receive additional compensa-
tion for extra services in the further conduct of the case;
that after that time "Norval Brothers performed no more

than nominal services," but the court also found that they did not withdraw as attorneys in the case; that the reasonable value of such extra services of Thomas was $9,500; and that, after the payment of $9,500 to Thomas, the remainder of the fee arising from the sale of the judgments to Mullen should be divided into three equal parts, one-third to Thomas, one-third to Burr, and one-third to Norval Brothers, or their assignees.

Mr. Thomas appealed, mainly from the allowance of any compensation to Norval Brothers derived from the Mullen sale, urging as a ground for reversal "that the contract of the clients with Norval Brothers was an entire and indivisble contract for compensation contingent upon success in the litigation; that, having abandoned their contract prior to its completion and permitted its execution to be taken over by Thomas under a new agreement with the clients, Norval Brothers forfeited all right to demand compensation thereunder."

The evidence establishes that, after the judgments had been reversed by the supreme court of this state, Norval Brothers, who had performed many and valuable services, and had expended much time and labor in the prosecution of the several suits, became convinced that the judgment of this court could not be reversed, and that further prosecution of the actions would be fruitless, and so expressed themselves to the other attorneys, and that thereupon the agreement with Thomas was made. Mr. Lowley had died before the recovery of the judgment in the district court.

We think that neither the evidence nor the law justifies fully the contentions made by Mr. Thomas. While Norval Brothers are entitled to share in the distribution of the proceeds, we are convinced from the testimony as to the labor performed and time expended by Mr. Thomas that the amount awarded to Norval Brothers by the district court should be reduced, and that awarded Mr. Thomas and Mr. Burr increased. The evidence shows that the determination to take the case to the supreme court of

the United States the second time after the adverse de-
cision in this court was largely brought about by the
energy and persistence of Mr. Burr. However, the
greater part of the work, after this conference and agree-
ment between the attorneys, was performed by Mr.
Thomas, and he should have, as the district court found,
the larger portion of the compensation.

Appellant Burr contends that in such an enterprise no
one attorney is entitled to greater compensation than an-
other; that the alleged contract between the attorneys as
to the appeal to the supreme court of the United States is
void for want of consideration, is so uncertain and incom-
plete as to be unenforceable, and had not been established
by the evidence, and that no extra compensation should
be allowed Thomas.  We are satisfied with the decision of
the district court upon these points.  We agree with ap-
pellant that, in a controversy between attorney and client
as to fees, an attorney employed on a contingent-fee basis
is entitled to nothing if he abandons the case and recov-
ery is finally procured by another attorney.  No client is
complaining, and the principle is not applicable.  The re-
lations to be examined are those existing among the at-
torneys themselves who were engaged in a joint enter-
prise and occupied a special partnership relation.  Under
the general principles of law applying to the division of
fees between attorneys who are associated together in the
conduct of litigation, and in the absence of any special
agreement, each is entitled to an equal share of the fee.
*Underwood v. Overstreet*, 188 Ky. 562, 10 A. L. R. 1352,
and cases cited in note on page 1357.  Also, see *Lamb v.
Wilson*, 3 Neb. (Unof.) 496, on rehearing, 505.  In view,
however, of the peculiar circumstances of the case, and of
the facts in evidence in regard to the nonparticipation by
Norval Brothers in the later conduct of the case, and the
agreement between the attorneys, we are satisfied that
Norval Brothers are entitled to no compensation for
services performed after this agreement was made.  They
should, however, be allowed the reasonable value of their

services before that time, the value to be based in proportion to the services rendered, and the amount of the ultimate recovery from the sale of judgment to Mullen. The district court awarded $8,165.32 to the assignees of Norval Brothers. From this amount we deduct $3,000, and award $2,000 thereof to Mr. Thomas, in addition to the sum awarded him by the district court, and $1,000 thereof to Mr. Burr, in addition to the amount awarded him by the district court. The remainder, $5,165.32, is awarded to the assignees of Norval Brothers in the proportion as their interest appears under the assignment of Norval Brothers.

As to the cross-appeal of Mrs. Lowley, we are convinced that under the evidence the district court properly found that the estate of George W. Lowley was not entitled to any share of the proceeds of the Mullen sale.

Burr was made a party to the appeal by Thomas. He afterwards dismissed his appeal as to Burr. He now contends that Burr is not entitled to appear as a cross-appellant in the case, and that the decree is final as to him. We are convinced that, where the relations between the parties, the issues, and the facts are so interwoven as in this case, the appeal of Thomas brought up the whole question as to the proper distribution of the fund, and that Burr has a right to appear.

With respect to the cross-appeal of Bailey, we find that the book of accounts kept by Jones, trustee, is not fairly subject to the animadversions made upon it by Mr. Burr. It is true that the entries in the book are made with pencil, but the items, except in a few instances, follow consecutively, and the trustee testifies they were made in accordance with the facts. Much is said about the payment of certain money to Mr. E. T. Wade of Washington, D. C., but we think there is sufficient evidence to justify the expenditure to him for his services in procuring evidence.

The trial court found in favor of the trustee upon the items set forth in the book, and we believe no sufficient

ground has been shown for setting the same aside. Its judgment in this respect, therefore, is affirmed.

The judgment of the district court, except as modified by what has been said with reference to the compensation of Norval Brothers, and the distribution of the money on hand after deducting $3,000 from the amount awarded their assignees, is affirmed, and the cause remanded, with directions to enter judgment in accordance with this opinion. It is further ordered that all costs, except briefs in this court, be paid from the common fund, and each party shall pay the costs of his or its own briefs.

AFFIRMED AS MODIFIED.

FLANSBURG, J., dissenting.

The suits, in which the attorneys' fees here in controversy were earned, were brought by several plaintiffs: The Jones National Bank, the Bank of Staplehurst, the Utica Bank, and Thomas Bailey, and Isaac Holt, in February, 1895. The firm, of which Mr. Thomas was a member, originally represented plaintiffs whose claims amounted to more than 63 per cent. of the total amount claimed by all. This firm originally represented the Jones National Bank and the Bank of Staplehurst. The firms, of which Mr. Burr and Mr. Norval were members, represented the other plaintiffs. The cases involved identical questions of law, and there was, therefore, a common interest and object among the several plaintiffs, and it seems, according to the conclusions of the trial court, that after the prosecution of the cases had commenced the attorneys for the various clients reached an understanding that the prosecution of the several cases should be carried on jointly, that the fees recovered should be pooled, and that a division of the fees should be made between the three firms.

The cases were pending in court, from the time of filing until their final conclusion, some 25 years. They were, at first, won in the trial court, and those judgments were affirmed in the supreme court, but reversed by the United States supreme court. On a second trial in the district

court judgments were again recovered, and, on appeal to the state supreme court, the judgments were reversed and the cases dismissed. That was in 1914.

After this reversal, and when it appeared that the chance for winning by a second appeal to the United States supreme court was a desperate one, if not entirely hopeless, a meeting was had by the attorneys, Mr. Thomas, Mr. Norval, and Mr. Burr, at which meeting Mr. Jones, of the Jones National Bank, was present, and Mr. Norval, as the trial court found, "stated, in substance and effect, that he did not think the Capital National Bank cases could be won, and that he was opposed to prosecuting said cases further, and that he was unwilling to devote any more time to said Capital National Bank cases, and, in substance, stated that he was not willing to have anything further to do with said Capital National Bank cases." It is further shown by the record that Mr. Norval then advised his client to make no further expenditure in the matter, and his client thereupon sold and assigned his claim to the Jones National Bank. From that time forth, it appears that Mr. Norval had nothing whatsoever to do with these cases, as an attorney, and that he utterly abandoned any further participation in them and gave no further assistance in their prosecution. The trial court found that from that time on "Norval Brothers performed nothing *more* than nominal services." If the trial court, by that recital, meant to infer that Norval Brothers did perform "nominal services," I do not believe that finding is sustained by the record. Such a finding could have been based upon one isolated fact only, and that is that Mr. Thomas casually met Judge Norval, a member of the firm of Norval Brothers & Lowley, but not the Mr. Norval who had been actively participating in the cases, and suggested to him a proposition as to whether or not findings by the supreme court in the case could be treated as independent and original findings of fact by that court, or whether they should be treated simply as a review of ultimate findings of fact by the trial court, and Judge Norval,

as attorneys are accustomed to do, in a casual way expressed some opinion upon that question.   It does not appear that this was done with any idea or intention, on the part of Judge Norval, to render it as an attorney in the case, and, in fact, it seems to me clear that Norval Brothers considered their connection with the case definitely terminated immediately following that conversation, which took place after the reversal and dismissal by the Nebraska supreme court in 1914.   From that time forward, Mr. Burr and Mr. Thomas appear to have been the only attorneys representing the interests opposed to the Capital National Bank.   From that time forward they appeared as the only attorneys of record. They prepared the briefs and did all the work necessary for the final appeal and presentation of the cases to the United States supreme court, and all the work necessary for an ultimate and favorable decision from that court.

Upon this condition of the record, the trial court concluded, *as a proposition of law,* that Norval Brothers had not withdrawn as attorneys in the case.   With that conclusion of law I cannot agree.   The legal effect of the facts, as above set forth, seem to me, conclusively and unequivocally, to establish a definite and complete severance of their relation as attorneys from all further connection with the litigation.

The contract, such as was found by the trial court, for a pooling and division of fees between the various attorneys connected with the litigation was an entire contract, by which it was necessarily understood that each should take his remuneration from funds which were entirely contingent upon their joint efforts, and that the joint service of all should contribute to the ultimate result. Under such an agreement, no one of them would be entitled to recover from the other what he believed, or even what he might be able to prove, his own services were reasonably worth.   The services of each contributed to a common cause, and the value of those services, which value was not determined by any agreement between the

parties, was not apportionable. It was an entire and not a divisible contract for services, and the services rendered were not of such a kind that the value of the service of one could, by any definite standard of value, be measured in comparison with the value of the services of the other associates in the enterprise, as would be the case, for instance, where a man is hired to plow a field, or husk corn, and where each hour's work brings its direct benefit to the employer in results, and where its value and its benefit may be measured by a common and well-recognized standard of wages per hour, or per day. If an attorney could not recover the reasonable value of his service should he have remained in the case, he certainly cannot be privileged to have that recovery because of the fact that he has voluntarily and, as it proves, wrongfully withdrawn from the case. In order that any one of these attorneys should be allowed to recover upon the final outcome of the cases, in the event of victory, it was necessary that he should, throughout, perform his part and share in the undertaking. When any one of them threw up his hands and abandoned further prosecution, voluntarily and of his own volition, and without excuse or justification, because he believed the case hopeless and because he was unwilling to further participate and share in the burden of continuing in the performance of his agreement, and because he was unwilling to see his client expend further moneys in what he considered a hopeless venture, it certainly must be that he should be held to have withdrawn entirely from the arrangement, and to have precluded himself from ever sharing in the profits and remuneration earned by those attorneys who remained steadfast to their task, and who successfully carried forth the work to its final and favorable conclusion. It seems to me that neither in law nor as a matter of abstract justice is Mr. Norval, or the assignee, to whom he has transferred his interest in this lawsuit, entitled to any recovery.

The controversy, however, yet to be determined, is be-

tween Mr. Thomas and Mr. Burr. It must be conceded that Mr. Thomas was always very actively engaged in the work of prosecuting these cases, that, as time went on, he assumed more and more a larger burden of the work, and that continuing from the time the case was reversed by this court in 1914 he has performed much the greater part of the work, and has assumed the larger control in the prosecution and presentation of the case on final appeal to the United States supreme court. This was done, as the trial court finds, by an understanding with Mr. Burr, by which it was agreed that Mr. Thomas should assume the major portion of the labor of the continued prosecution of the cases. It appears that Mr. Burr always had faith in a favorable outcome of these cases, and that, when Mr. Norval withdrew, he urged the further prosecution of them, and that Mr. Thomas agreed to continue with him. Mr. Burr was willing, not only to continue with his services, but to furnish expense money, and it was the finding of the trial court that an arrangement was made between Mr. Burr and Mr. Thomas, whereby Mr. Thomas, by reason of his agreed added service, should receive also extra compensation out of the fees to be ultimately recovered. Mr. Thomas and Mr. Burr are not in accord as to just what that agreement was, but Mr. Burr by his testimony shows that Mr. Thomas was to receive something extra. He testified that he had agreed that Thomas should take Norval's share of the fees; that is, the share that Mr. Norval would have recovered, had he remained in the case. There is also a letter in evidence, wherein Mr. Burr wrote Mr. Thomas as follows: "I feel we have further cast the burden of this case upon you, and I sincerely hope that some day, not so far away, you will receive the lion's share of remuneration for all your extra labors in these cases."

It is contended by Mr. Burr that, even though the trial court has made a finding of fact that there was an agreement between himself and Mr. Thomas whereby Mr. Thomas was to receive extra compensation for his serv-

ices, such an agreement would be wanting of any consideration and, therefore, unenforceable.    It is argued that Mr. Thomas was already obligated to his clients to do everything that his good judgment dictated toward attaining a successful result, and that when, in the opinion of Judge Thomas, it appeared to be possible and probable that a successful outcome of the cases might result by a further appeal to the United States supreme court, then it became his positive duty to conduct and prosecute such an appeal, by reason of an obligation owing to his clients to do whatever his judgment might dictate should be done for their best interests.    His agreement to assume a larger proportion of the work, since Mr. Norval had withdrawn from the case, necessarily increasing the burden to be borne by the two remaining attorneys, would seem to have been a good consideration for the alleged agreement made with Mr. Burr.    When Mr. Norval withdrew from the joint employment and left the two attorneys alone to conduct the further prosecution of the cases, they were entitled to arrange between themselves for a distribution of the increased burden.    The arrangement, therefore, by which Mr. Burr and Mr. Thomas agreed to continue the prosecution of the cases alone, and Mr. Thomas to assume a larger proportion of the work, not theretofore assumed by him, was, it seems to me, not lacking of consideration and should be held to be legal and binding between the parties.

According to Mr. Burr's statement, it appears that he was willing, at one time at least, that Mr. Thomas should take the share of the fees which would have been allotted to Mr. Norval, had he maintained his relations as attorney in the cases.    This would have been one-third of the total contingent fee recovered.    It also appears that Mr. Thomas was the representative originally of clients who had some 63 per cent. of the total amount claimed by all the plaintiffs, taken together.    Had his employment continued to be several, he would have recovered, then, 63 per cent. of the total contingent fee available.    It seems

to me, under the circumstances, that this court can arrive at no fairer distribution of the fund than to allow to Mr. Burr one-third of the fee and to Mr. Thomas two-thirds.

It is therefore my judgment that Mr. Burr should be given $10,643.18, and Mr. Thomas $21,286.37.

The amount available as attorney's fees from the Stuart judgment of $7,302.08 should have been equally divided between the three firms mentioned.

ALDRICH, J., dissenting.

The issue involved in this case is whether or not the contract btween the attorneys was an entire contract requiring full services to be rendered by an attorney in order to entitle him to recover anything for services done and performed. From the nature of the case the contract for services was entire and the fees were contingent.

It appears that the firm of Norval Brothers abandoned the case and rendered no service after April, 1914. Their duties devolved upon Mr. Thomas and Mr. Burr. The issue presented is whether or not Norval Brothers are entitled to recover any fees after having abandoned the case.

It is the rule of this state, as said in *McMillan v. Malloy*, 10 Neb. 228: "One Malloy entered into a contract with one McMillan to thresh his entire crop of wheat and oats at forty cents per acre. After threshing about one-third of the crop he refused to thresh the remainder, and after the time limited for the completion of the contract brought an action to recover the value of his services. *Held*, first, that the entirety of the contract having been severed by part performance, beneficial to the employer, the employee was entitled to recover the value of his labor over and above the damages sustained by a breach of the contract; second, when a contract has been established, the measure of recovery in each case is the price agreed upon in the contract less the damages sustained by the employer by the breach of the same." In this case just cited some benefit accrued from services rendered by the plaintiff, while there was no benefit aris-

ing from services rendered by Norval Brothers. Norval Brothers are subject to the general rule that, while a special contract remains open or unperformed, the one whose part of it has not been performed cannot recover for what he has done until the whole contract has been completed. Norval Brothers under this rule cannot recover. In *McMillan v. Malloy, supra,* some equity was done by those threshing grain. A contract was made to thresh a certain number of acres of grain at 40 cents an acre. When plaintiff threshed about one-third of the grain he rendered service to the defendant for which he should pay on the doctrine of *quantum meruit,* but in the instant case the whole basis of the position of Norval Brothers is on services rendered, but from the nature of the transaction it follows they could not render any services. The case of *McMillan v. Malloy,* 10 Neb. 228, has no application to the instant case and is not to be considered in determining the issues herein. *McMillan v. Malloy* was based upon the famous case of *Britton v. Turner,* 6 N. H. 481. The books show that the case has been criticized by the court which rendered it. It was distinguished and modified by Massachusetts. The supreme court of Ohio said: "The case of *Britton v. Turner* is itself an innovation upon the long-established principles governing *entire* contracts, lessens the sanctity of agreements, and tends to encourage their violation." *Larkin v. Buck,* 11 Ohio St. 561.

As further elucidating the doctrine of entire contracts see *Johnson v. Fehsefeldt,* 106 Minn. 202. The court castigates in substance the rule laid down by the court in the following language: "It would be obviously inconsistent with common justice that plaintiffs should recover *pro tanto* on the contract which they had substantially violated. They were in the wrong. They were not in a position to say to the defendant: 'We will perform the contract we have agreed to if it prove profitable. If we find it unprofitable, we will abandon it.' That would be to contradict the contract. Such reasoning is forbidden by its terms. Defendant did not agree in advance to a

Jones v. Thomas.

breach of the contract and to accept in lieu of perform-ance the requirement that he pay plaintiffs for what they had done under the contract and for the balance, to ac-cept the right to try damages before a jury."

In fact this quotation is in line with the great weight of authority and follows the majority of the cases. We should follow the rule of the courts that one who breaches his contract cannot base an action thereon against the other party thereto. The decisions are practically unani-mous in holding that neither in entire contracts nor in the units into which divisible contracts can be divided can there be any recovery on the contracts themselves when such entire contracts or units of divisible contracts have been only partly performed at the time of abandonment. This is on the theory that part performance is a condition precedent to the right of demanding anything on the contract. See note L. R. A. 1916E, 790, 795. It is said in *Hibbard v. Kirby*, 38 Ark. 102: "The rule seems to be that if the contract of the servant to labor, be for a specified period of time, and payment is to be made, either expressly or by implication of law, at the end of the period, and the servant leaves the service of his master improperly, without sufficient cause, and without his con-sent, before the termination of that time, he can recover no compensation for his services, either on the contract or on a *quantum meruit.*" Then, again, in *Badgley v. Herald*, 9 Ill. 64, it was said that a contract to work for six months for $8 a month is an entire contract, and where the employee abandons the service before the ex-piration of that time he cannot recover for the services rendered. This meets the issue of the instant case, as does *Hofstetter v. Gash*, 104 Ill. App. 455, and has the ap-proval of the great weight of authority. It has been universally held that a contract to work a stated period at a specified rate per month is entire, and that the em-ployee cannot, upon abandoning his employment without excuse or justification before the termination of the period, recover upon the contract compensation for his

part performance. *De Camp v. Stevens,* 4 Blackf. (Ind.) *24; *Larkin v. Buck,* 11 Ohio St. 561; *Davis v. Maxwell,* 12 Met. (Mass.) 286.

In the principles of law laid down in *Huyett & Smith Co. v. Chicago Edison Co.,* 167 Ill. 233, it was stated that a contract to put in and complete a ventilating system for a given sum of money, all of which is to be paid in 30 days after acceptance of the work, is an entire contract. It is also a rule that, if the subject-matter of an entire contract has been destroyed by fire or otherwise without the fault of either party before the contract is fully performed, there can be no recovery on a *quantum meruit* or otherwise for a part performance. This is the rule supported by the overwhelming weight of authority. It has been followed and seems to render precise justice in the instant case. Norval Brothers abandoned their contract and plaintiffs were forced to procure other attorneys to carry out what Norval Brothers had undertaken. That would be unjust and inequitable.

In *Faxon v. Mansfield,* 2 Mass. *147, it was held that one who abandons the contract for the construction of a barn before the completion thereof cannot recover any part of the compensation which under the contract he was not entitled to receive until the barn was done. *Cronin v. Tebo,* 71 Hun (N. Y.) 59; *Jennings v. Camp,* 13 Johns. (N. Y.) 94, 7 Am. Dec. 367. There can be no recovery on an entire contract to do an entire piece of work for a specified sum unless the work is performed; and it is evident that, when a conclusion is reached as to what constitutes an entire contract, there is little left for the court to determine. *Norris v. Harris,* 15 Cal. 226.

The entirety of a contract depends upon the intention of the parties, as well as upon the fact that the consideration is single. The divisibility of the subject-matter or the mode of receiving the price does not affect the question. The covenants of the contract are of course mutual and dependent according to the intention and meaning of the parties. It was the manifest intention

to employ Norval Brothers in their work on this case to
continue until they got results.   Without cause or reason
on their part they arbitrarily quit the employ of their
clients because they thought they could not recover.
R. S. Norval said that he knew a lawsuit when he saw it,
knew when he had enough, and that he had done his full
duty by his client, and did not believe they could win and
was ready to quit.   This was said in April, 1914, at Mr.
Burr's office, and from then on Burr and Thomas made a
new contract and entered into new employment with
respect to these cases.   In support of these propositions
laid down we cite *Pollak v. Brush Electric Ass'n,* 128 U.
S 446, and *Morris v. Wibaux,* 159 Ill. 627.   In this con-
nection it is the general rule of law, deduced from the
cases recorded and gleaned as a result of our reading,
that while a special contract remains open or unperformed
the one whose part of it has not been performed cannot
recover until his whole contract is completed.   *Dermott v.
Jones,* 23 How. (U. S.) 220; *McClurg v. Price,* 59 Pa. St.
420, 98 Am. Dec. 356; *King v. Mason,* 42 Ill. 223, 89 Am.
Dec. 426.   A discussion of the principle is found in a note
to *Sargent v. McLeod,* 52 L. R. A. (n. s.) 381, and is as
follows:   "It is well settled that an attorney employed on
a contingent fee, who, without any fault on the part of
his client, neglects or refuses to perform the contract of
employment, and abandons or withdraws from his client's
case, thereby forfeits all his rights under the contract
(*Morgan v. Roberts,* 38 Ill. 65; *Holmes v. Evans,* 129 N.
Y. 140, affirming 27 Jones & Sp. 136, 13 N. Y. Supp. 614),
and he cannot, after the client has succeeded in the case
through another attorney, recover the fee contracted for
(*Potts v. Francis,* 43 N. Car. 300) ; nor, in the absence of
good and sufficient cause or excuse for his withdrawal, can
he recover any compensation for the services which he has
rendered (*Houghton v. Clarke,* 80 Cal. 417; *Parish v.
McGowan,* 39 App. D. C. 184; *Johnson v. Clarke,* 22 Ga.
541; *McDonald v. De Vito,* 118 App. Div. 566, 103 N. Y.
Supp. 508; *Southern Nat. Bank v. Curtis,* 36 S. W. (Tex.

Civ. App.) 911; *Farwell v. Colman,* 35 Wash. 308).".
The principle of law has been well set forth in the following statement: "If an agent or attorney, having undertaken to collect a debt for a certain share of what he may recover, finally abandons further effort as useless, and, at a subsequent period, the principal receives payment through new instrumentalities, or from causes with which the agent has no connection, he cannot claim the share to which his contract would have entitled him if payment had been secured by his efforts." *Scoville v. Trustees,* 65 Ill. 523. This same principle is well stated in 6 C. J. 743, 744, secs. 318, 319. Also it is held in L. R. A. 1916E, 790 *et seq.,* that recovery cannot be had on such a contract by one who has abandoned without just cause or excuse, nor can such a one recover on a *quantum meruit.* Also for a complete discussion of these matters see the note generally, L. R. A. 1916E, 790. There can be no doubt from these authorities cited that this was an entire contract. Also, as further elucidating the same principle, see *Potts v. Francis,* 43 N. Car. 300; *Cahill v. Baird,* 138 Cal. 691, and *Holmes v. Evans,* 129 N. Y. 140. The contract of an attorney to perform legal services in a litigation is entire and he cannot recover if he abandons without justifiable cause. *Halbert v. Gibbs,* 45 N. Y. Supp. 113; *Cary v. Cary,* 89 N. Y. Supp. 1061. Where one continues for an indefinite time until a part service is accomplished, he cannot recover where he wilfully and without cause abandons the work before the expiration of the time for the performance of the service; and this is especially applicable to the engagement of attorneys with their clients. *Blanton v. King.* 73 Mo. App. 148. On the theory that an attorney under such circumstances cannot recover on the principle of *quantum meruit,* see note L. R. A. 1916E, 790, 800. There we find the rule laid down as follows: "According to the rule adopted by the majority of the courts, there can be no recovery upon the common counts for the value of work and labor performed by a servant or person engaged to perform certain work who

has, without excuse, abandoned the service of his employer, or person who engaged him."

We should heartily concur and give our assent to this rule. It states the law with reference to the intention of the parties who made this contract and elucidates the idea that contracts of retainer of attorneys are entire, especially where the fee is contingent upon the result of the action. In support of this proposition see *White v. Wright,* 16 Mo. App. 551; *Blanton v. King,* 73 Mo. App. 148; *McDonald v. De Vito,* 103 N. Y. Supp. 508; *Houghton v. Clarke,* 80 Cal. 417. These cases well establish and maintain the propositions contended for. They give application to the true utterance of what is right and just under the facts herein admitted. Norval Brothers, as appears of record, abandoned this case and did not further appear after April, 1914, and yet their services would have been helpful to a successful termination of this long and tedious litigation. The kind of contract they were working under appears to be what is known in the law as an entire contract, and it clearly was the intention of the parties that they should stay in the case until it was successfully terminated before they got their pay, and having abandoned it before its successful termination they cannot be counted in on the final payment for services rendered. As a condition precedent to getting their pay it is obvious from the great weight of authority, quoted and cited, that it is necessary for them to stay to the end. Such being the undisputed state of facts, we should adhere to the rule almost universally held that one to reap the advantages of his labor must do as he agrees and stay to the finish of his contract, and not abandon his clients when half way across the stream.

I am therefore compelled to come to the conclusion that the decree, so far as it finds in favor of Norval Brothers assignees, should be reversed. But in this connection it should be borne in mind that Norval Brothers' assignees obtained $8,165.32, and that $7,443.18 was realized upon the judgments obtained after Norval Brothers

abandoned the cases. In the division of the fees derived from the Stuart judgment in the settlement made by the attorneys among themselves, Mr. Thomas received less than one-third, while the decree of the court reduced it to one-fourth, thus requiring him to refund a part of the fees paid him in 1902 and 1903. We should reverse as to the fees allowed Norval Brothers' assignees for services from judgments obtained after the abandonment and affirm as to the fees obtained before abandonment. The record shows that Norval Brothers rendered no service to their clients herein after April, 1914. That service was rendered in the supreme court of Nebraska in April, 1914, is not supported by the evidence. The contract under which Norval Brothers were working was an entire and indivisible contract and no recovery could properly be had thereon without conferring a corresponding benefit, and it is in recognition of that principle that we should allow Norval Brothers to retain the fee they received in the Stuart case, and this also applies to the services rendered by Judge Lowley. It has been conceded by Norval Brothers and Mr. Burr that Mr. Thomas took the laboring oar, expended the nervous energy and industry necessary to win this case, and that he should have the "lion's share" paid in fees necessary to win the case and for labor and services performed. I concur in that view of the case, and hold that Thomas should receive two-thirds of the fee granted and allowed to Norval Brothers' assignees, and Burr should have the remaining one-third added to his fee. In all other respects the decree of the court should be affirmed.