14 So.2d 469

McCANN et al. v. TODD.

No. 36712.

May 17, 1943.

Rehearing Denied June 21, 1943.

Dissenting Opinion June 24, 1943.

See, also, 201 La. 953, 10 So.2d 769.

Ellis, Ellis & Barranger and O'Niell & O'Niell, all of New Orleans, for defendant and appellant.

M. C. Scharff and Fred A. Middleton, both of New Orleans, for plaintiffs and appellees.

PONDER, Justice.

John J. Finnorn and Cameron C. McCann, attorneys, brought suit against Robert B. Todd, another attorney, to recover 35% and 30%, respectively, of $60,279 collected by the defendant as attorney's fees in certain litigation in which the plaintiffs and the defendant participated as attorneys. The plaintiffs allege that the respective amounts are due them under a verbal contract with the defendant. The defendant admits that each of the plaintiffs is entitled to a part of the fees, but takes

the position that such is due them on a quantum meruit basis.

It appears that the sum of $60,279 paid to the defendant as fees represents notes, bonds and cash. Bonds in the amount of $27,200, collected by the defendant as part of the attorney's fees, having been sequestered, are now deposited in the registry of the court to await the outcome of this suit. The plaintiffs claim that they are entitled to be recognized as owners of these bonds.

The commissioner appointed by the Civil District Court for the Parish of Orleans, after hearing much testimony and considering a great amount of documentary evidence, arrived at the conclusion that the plaintiffs had failed to establish that there was a verbal contract between the parties for the division of the fees and concluded that the relationship existing between them was that of joint adventure. He recommended that Finnorn be awarded 33⅓% of the total amount of the fees and that McCann be awarded 30% of the fees, since McCann only asked for that proportion.

The district judge, after reviewing the record, the finding of the commissioner and hearing the arguments, entertained a different opinion and held that the plaintiffs had established that there was a verbal understanding between the parties to the effect that the fees were to be divided on the basis of 35% to Todd, 35% to Finnorn and 30% to McCann.

The lower court gave judgment recognizing the plaintiffs to be owners of the bonds deposited in the registry of the court in the proportion of $14,646.15 to John J. Finnorn and $12,553.85 to Cameron C. McCann. The court also gave judgment in favor of Finnorn in the full sum of $17,878.65, with interest from judicial demand, subject to the credit of $14,646.15; and in favor of McCann in the sum of $15,217.87, with interest from judicial demand, less the credit of $12,553.85. The defendant has appealed.

On the issue of whether or not there was a verbal agreement as to the method of dividing the fees, the testimony and evidence are in conflict and irreconcilable. The record shows that Todd and Finnorn were originally employed as attorneys to prosecute certain claims on contingent fees, and that they were to share equally in the division of the contingent fees. McCann was subsequently associated with them in these matters.

The various claims were compromised, and the defendant, Robert B. Todd, collected the contingent fees in the amount of $60,279, represented by $9,479 in cash and $50,800 debenture notes or bonds. Debenture notes or bonds to the value of $27,200 have been sequestered and are now deposited in the registry of the court to await the outcome of this suit.

The defendant concedes that the plaintiffs are entitled to a fee on a quantum meruit basis. The manner in which the fees were to be divided after McCann was associated with Todd and Finnorn is uncertain. The testimony of the plaintiffs and certain documentary evidence tend to support the plaintiffs' contentions that there was a verbal contract between the parties as to the division of the fees. While, on

the other hand, the testimony of the defendant and other documentary evidence tend to show that there was no agreement as to how the fees were to be divided. From the record in this case, it is very doubtful that the plaintiffs and the defendant anticipated that the fees would reach such proportions or that so much of their time would be required. Otherwise, it is only reasonable to conclude that they would have had a definite understanding as to how the fees were to be divided, after McCann was associated as an attorney. The plaintiffs' testimony indicates that the plaintiffs sincerely believed that there was a verbal agreement as to the division of the fees. The same observation may be made with respect to the defendant's testimony with reference to his contention that the fees were to be paid on a quantum meruit basis.

Without going into detail, for an analysis of the evidence would require an extremely lengthy narration, it is sufficient to say that it is very doubtful that there was a meeting of the minds of the respective parties, since they entertain such different views and impressions. Our views are in accord with those expressed by the Commissioner in his exhaustive and analytical report; that is, the plaintiffs failed to establish with a sufficient degree of certainty that there was a verbal agreement between the parties. However, the record does not support the defendant's contention that the plaintiffs were employed on a quantum meruit basis.

At the outset of the employment, there was a positive agreement between Finnorn and Todd that the fees would be divided equally, and from our appreciation of the record, they were engaged in a joint enterprise. In the absence of any specific agreement, after McCann was associated as an attorney, it is only reasonable to conclude that the nature of the enterprise, that of joint adventure, was not intended to be changed, and a different one, employer and employee, substituted. Therefore, under the circumstances in this case, there would be an implied agreement that the fees were to be divided equally.

"'A joint adventure has been aptly defined as a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.' 33 C.J. p. 841. A joint adventure has also been defined as 'An association of two or more persons to carry out a single business enterprise for profit.' Fletcher v. Fletcher, 206 Mich. 153, 172 N.W. 436, 440. It has been held that a corporation may be a member of a joint adventure, the purposes of which are within its corporate powers. Tusant & Son Co. v. Chas. Weitz Sons, 195 Iowa 1386, 191 N.W. 884. The relations between joint adventures are assimilated to those of partners inter se. Ludeau v. Avoyelles Cotton Co., [164 La. 275, 113 So. 846] supra. As respects the character of the business undertaken, the principal difference between a partnership and a joint adventure 'is that, while a co-partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure is usually, but not necessarily, limited to a single transaction, although the business of con-

ducting it to a successful termination may continue for a number of years.'" Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228, 231.

▆ "An agreement by an attorney who has been retained to prosecute claims on a contingent fee to share the fee with another lawyer who is employed to act as counsel in the litigation establishes between them the relation of joint adventurers and not of employer and employee." 33 Corpus Juris, p. 845, sec. 11.

▆▆ "Lawyers jointly undertaking to represent a client without a contract as to the division of the fees share equally. The same rule applies where one attorney engages another attorney to assist in the prosecution of litigation for a contingent fee under an agreement to share the fee if successful." 5 Am.Jur., p. 386, sec. 207.

"In the absence of any agreement or custom to the contrary, attorneys jointly undertaking to render legal services are entitled to share equally in the compensation; and an attorney collecting the entire fee is liable to his associate for his proper share. Attorneys employed severally are entitled to recover the reasonable value of their respective services in the absence of a different contract.

▆ "Attorneys who jointly undertake to prosecute or to defend a lawsuit are entitled, in the absence of any agreement to the contrary, to share equally in the compensation, and it is immaterial which attorney furnishes the most labor or skill; neither can charge the other for extra services, and mere neglect by one of them

to discharge his duties will not be an abandonment of the contract, nor will it extinguish his claim to one half the proceeds.

"So, where an attorney retained in a case employs or procures the employment of another to assist him, as regards the division of fee, the agreement constitutes a joint adventure or special partnership, and although it has been held that the employed attorneys should receive only reasonable compensation, in the absence of any agreement to the contrary, there is an implied agreement that, although one performs more work than the other, they should share equally. This principle may be varied by a subsequent agreement between the parties, however, and where it is agreed that one of the attorneys shall take no further steps in the case and that another shall receive extra compensation for carrying on the litigation, the latter is entitled to a reasonable sum for his additional services, and the former, only to the reasonable value of his services up to the time of the agreement." 7 C. J. S, Attorney and Client, p. 1038, § 174.

"In the absence of a controlling contract between lawyers, the lawyer severally employed is entitled to the reasonable value of his individual services, and the lawyer jointly employed is entitled to share equally with the other lawyers so employed with him in the fee obtained from the client. When several lawyers prosecute an action under a contingent fee contract and they are successful, they share equally in the fee as joint adventurers and special partners unless they have agreed to divide the fee in a different manner." Earl W. Wood, Fee

Contracts of Lawyers, "Division of fees between lawyers," sec. 100, p, 295.

In the cases of Brauns v. Housden et al. and Kemp et al v. Brauns et al., 195 Wash. 140, 79 P.2d 981, 983, Mrs. Brauns employed Alfred Gfeller, an attorney, to prosecute a claim for the wrongful death of her husband. Gfeller, who had become quite deaf, engaged another attorney, Mr. Kemp, to assist him. Mr. Driver, an attorney, was also associated in the case. The question involved in the suit was the division of the attorneys' fees. It was held that the fees should be divided equally among the three attorneys. The court made the following pertinent observations:

"In our opinion, after concluding that Mr. Driver was not substituted for Mr. Gfeller, but was merely added to the two attorneys already employed, it would have been a somewhat more fortunate disposition of the matter, and also a legally sound one, had the trial court made the division of the fees by invoking the rule applicable to special partnerships. Under that rule, Gfeller and Kemp were originally special partners, and in the absense of other arrangements each was entitled to one-half of the fee. When Mr. Driver was added (as found by the court), and without any agreement being made as to the division of the fees, the special partners became three in number and each became legally entitled to a third of the fee. Langdon v. Kennedy, Holland, DeLacy & McLaughlin, 118 Neb. 290, 224 N.W. 292, 63 A.L.R. 896. This case quotes from Jones v. Thomas, 106 Neb. 635, 184 N.W. 151, as follows ([118 Neb. at page 294], 224 N.W. at page 293):

" 'Where several attorneys engage in the prosecution of litigation for a contingent fee, in the absence of any other agreement, they will be held, upon the successful result of the suit, to share equally in the distribution of the fee.' (Citing cases.)

"A further quotation is made from that case as follows:

" 'Where such a relationship exists a partner—"Has no right by implication to claim anything extra by reason of any inequality of services rendered by him, as compared to those rendered by his copartners. * * *" '

"It is so held in Underwood v. Overstreet, 188 Ky. 562, 223 S.W. 152, 10 A.L.R. 1352. See, also Gill v. Mayne, Iowa, 162 N.W. 24, and the recent case of Bailey v. Griggs, 174 Okl. 90, 49 P.2d 695, and the many authorities therein cited.

"As the application of the special partnership rule results in awarding the respondent the identical amount awarded by the trial court, the judgment appealed from is affirmed."

"Under this construction of the pleadings, plaintiff and defendant were engaged in a joint adventure and occupied a special partnership relation and, it not appearing from the facts alleged in the answer that there was any agreement as to how the fee was to be shared by the parties, if successful, the law requires that they share equally in the distribution. In the case of Jones

v. Thomas, 106 Neb. 635, 184 N.W. 151, it was held by this court:

" 'Where several attorneys engage in the prosecution of litigation for a contingent fee, in the absence of any other agreement, they will be held, upon the successful result of the suit, to share equally in the distribution of the fee.' See Underwood v. Overstreet, 188 Ky. 562, 223 S.W. 152, 10 A.L.R. 1352; Gill v. Mayne, Iowa, 162 N.W. 24; Henry v. Bassett, 75 Mo. 89; Senneff v. Healy, 155 Iowa, 82, 135 N.W. 27, 39 L.R.A.,N.S., 219; Robarts v. Haley, 65 Cal. 397, 4 P. 385; Ford v. Freeman, 40 Cal.App. 221, 180 P. [545], 548; Hereford v. Meserve, 9 Cir., 272 F. 353.

"The rule is based upon the theory that attorneys so prosecuting litigation for a contingent fee are engaged in a joint enterprise or joint adventure and occupy a special partnership relation. Where such a relationship exists a partner—'has no right by implication to claim anything extra by reason of any inequality of services rendered by him, as compared to those rendered by his copartners. The reason for this rule lies in the fact that each partner in taking care of the joint property is practically taking care of his own interest and is but performing his own duties and obligations growing out of the partnership. Furthermore, the relative value of the services rendered by the several partners of a firm cannot be estimated and equalized, for it is impossible to see how far the relative knowledge, skill and ability of each enter into the adjustment of the terms of the contract. The courts, therefore, usually decline to look into the question as to which

partner has performed the more onerous duties or as to whether one has been more skillful or more industrious than the other. And a partner is not entitled to claim compensation for his services in business without a special contract therefor, although he attends almost exclusively to the business.' 20 R.C.L. Sec. 90. See Consaul v. Cummings, 222 U.S. 262, 32 S.Ct. 83, 56 L.Ed. 192; 15 R.C.L. 502, § 4; 33 C.J. 860, 861, §§ 65–67." Anthony E. Langdon v. Kennedy, Holland, DeLacy & McLaughlin, 118 Neb. 290, 224 N.W. 292, 293, 63 A.L.R. 896.

In the case of Consaul v. Cummings, 222 U.S. 262, 32 S.Ct. 83, 84, 56 L.Ed. 192, where attorneys had entered into a contract as special partners to prosecute a claim without any agreement as to the division of the fees, it was held the fees should be divided equally. In that case, the court had this to say:

"Claims of this sort are not favored. They lead to efforts to prove a disparity between the partners, when the law implies equality. They necessitate a balancing of the value of the work of each in securing the business and earning the profits, as well as a comparison of the time they may spend on the matters under consideration. Each partner is bound to devote himself to the firm's business, and there is no implied obligation that, for performing this duty, he should be paid more than his proportionate share of the gains. Neglect by one to do his part may be of such character as to justify a dissolution. But as long as the firm continues, there is usually no deduction because one partner

has not been as active as the other. The same is true where death prevents either of the partners from performing his contract." Also see: Robert v. Davis, 235 Mo.App. 974, 142 S.W.2d 1111.

In the case of Daspit v. Sinclair Refining Company, 199 La. 441, 6 So.2d 341, cited by the defendant, the parties involved in the controversy therein were not associated as joint adventurers or special partners in the prosecution of the suit. There was neither an expressed contract nor an implied agreement that such relationship should exist between them. The case is, therefore, not applicable.

The holding in the case of Harris v. Flournoy & Flournoy (Waller v. Flournoy & Flournoy), 238 Ky. 329, 38 S.W.2d 10, cited by the defendant, is contrary to the views we entertain and opposed to the general rule established in other jurisdictions.

■■■ Since McCann seeks to recover 30% of the fees, he is only entitled to that amount. The balance of 3⅓% should be divided between Todd and Finnorn for the reason that it cannot be said that it is the property of either to the exclusion of the other.

Under the decree of the lower court, Todd was awarded 35%, Finnorn 35% and McCann 30% of the fees. This division of the fees, in our opinion, is correct. While the lower court based its conclusion on the ground that there was a verbal contract, which is different from the ground upon which our holding is based, joint venture, yet the result is the same.

The lower court correctly recognized the plaintiffs to be the owners of the bonds deposited in the registry of the court in the proportion of $14,646.15 to Finnorn and $12,553.85 to McCann, for the reason that Todd had already received more than his share of the bonds.

■■■ The lower court allowed Finnorn interest from judicial demand on the sum of $17,878.65, less a credit of $14,646.15, representing the value of the bonds, and McCann interest on the sum of $15,217.87 from judicial demand, less a credit of $12,553.85, representing the value of the bonds. We do not believe that the plaintiffs are entitled to interest from judicial demand on the amounts represented by the bonds for the reason that the plaintiffs have been awarded the ownership of the bonds. However, the plaintiffs are entitled to interest from judicial demand on the amounts awarded them in excess of the bonds. In other words, Finnorn is entitled to interest from judicial demand on $3,232.50 and McCann is entitled to interest from judicial demand on the sum of $2,664.02. The judgment of the lower court in this respect should be amended.

For the reasons assigned, the judgment of the lower court is amended so as to allow Finnorn interest from judicial demand only on the amount of $3,232.50 and McCann interest from judicial demand only on the amount of $2,664.02. As thus amended, the judgment is affirmed at appellant's cost.

FOURNET, J., concurs.

HIGGINS, J., concurs in the decree.

HIGGINS, Justice (dissenting from the refusal to grant a rehearing).

The plaintiffs instituted this action for their pro rata share of attorneys' fees alleged to be due under a verbal agreement whereby Finnorn and Todd were to receive 35% each and McCann, 30% of the total fee. The defendant denied that there was such a verbal agreement and averred that the plaintiffs should be paid on a quantum meruit basis. The Commissioner, in his report to the district judge, concluded that neither the plaintiffs nor the defendant had successfully established their positions, but the evidence showed that the fee had been earned by these three attorneys in a joint venture and that each one of them was entitled to one-third thereof, in the absence of either a written or verbal agreement to the contrary.

The district judge found that there was a verbal agreement and awarded Finnorn 35% and McCann 30% of the fee, respectively, as prayed for.

After reviewing the evidence, we concluded that the Commissioner's and not the District Judge's finding was correct. Briefly, the lawyers had earned the fee in a joint venture and each one of them was entitled to 1/3 thereof, because there had been no agreement between them either in writing or verbally to the contrary. We stated that we were unable to give McCann the full 1/3 because he had only prayed for 30%. This ruling was correct and in accordance with Article 156 of the Code of Practice, which reads: *"If one demands less than is due him, and do not amend his petition, in order to augment his demand, he shall lose the overplus."* (Italics mine.) This Court then divided evenly, between Finnorn and Todd, and 3⅓% which McCann should have received, except for the fact that he did not claim and pray for the full amount due him. It appears that we did this purely on an equitable basis, on the theory that Todd had no more right to get the benefit of this 3⅓% than Finnorn, since they were joint adventurers and as Finnorn asked for 35% we were not giving him more than he prayed for.

Article 155 of the Code of Practice reads:

*"One should only demand in court what is really due to him; nevertheless, if one demand more, the action shall be sustained for, the amount actually due,* and the defendant shall pay the costs, unless he prove that, previous to the suit, he made a real offer of the amount actually due to the plaintiff, with the interest and the costs which had accrued."* (Italics mine.)

Here is positive law that where one demands more than is due him, his action shall be sustained for the amount actually due. While Finnorn prayed for 35%, we found that the amount actually and legally due him was 33 1/3% of the total fee. Consequently, in awarding him 35% on an equitable basis, we ignore our basic finding that he was only entitled to 33 1/3%, as well as the provisions of Article 155 of the Code of Practice that we could only grant him the amount actually due.

It was suggested that the defendant Todd had no greater right to retain the 3⅓%

that McCann should have claimed than did Finnorn. Todd was the defendant in the case. He was not responsible for the way in which the plaintiffs drafted their pleadings or made their claims. This Court is powerless, under the express provisions of Article 156 of the Code, to grant the plaintiff any more than he prays for and it is likewise, under Article 155 thereof, powerless to grant a plaintiff any more than is actually due him. In short, this Court would not be awarding Todd the $3\frac{1}{3}\%$—it would simply be a "windfall" in his favor as a result of the fact that McCann limited the Court's authority to grant him the full amount due him by praying for less than that sum. If the Court were authorized to act as an amicable adjuster or equitable compounder, the most equitable thing for us to do would be to give the $3\frac{1}{3}\%$ to McCann to whom it legally and justly belonged.

For these reasons, I respectfully dissent from the refusal to grant a rehearing herein on the defendant's application limited to the above point.