REGAN, Judge.
The plaintiff, B & R Construction Company, Inc., instituted this suit against the defendants, Harry J. Duvigneaud, Jr., Duvigneaud Investments, Inc., and Joseph D. Duvigneaud, endeavoring to recover the sum of $7,574.32, representing damages for breach of a contract entered into between the plaintiff and Harry J. Duvigneaud, Jr., for the construction and sale of two single dwellings and an equal division of the profits which resulted therefrom.
The defendants answered and denied that any profit emanated from the transaction. They then reconvened asserting their right to recover the sum of $2,127.54, representing an overpayment by them to the plaintiff in connection with the cost of construction of the houses.
From a judgment in favor of the plaintiff in the amount of $2,656.23, the defendants, have prosecuted this appeal.
The record reveals that on March 8,. 1960, the plaintiff entered into a contract with the defendant, Harry J. Duvigneaud,. Jr., to build two single brick veneer dwellings on property located in Poinsetta Drive in Lake Breeze Subdivision, Jefferson Parish, Louisiana, for the price of $13,500.00 per unit. In a supplemental contract of the same date, it was agreed that the proceeds derived from the sale of these houses were to be divided equally between the plaintiff and Duvigneaud Investments, Inc.
The land on which the houses were to he. constructed was acquired by Harry J. Du-vigneaud, Jr., for the amount of $5,250.00; for each building site.
The houses were completed in June or July of 1960, and the contract price was paid to the plaintiff, together with an additional $2,127.54. This amount forms the subject of defendants’ reconventional demand, predicated upon their contention that it represents an overpayment on the cost of construction. The plaintiff on the other-hand, insists that this payment was made after an audit of its records by defendants' accountant and represents the actual cost of erecting the houses.
In any event, in the course of six months, an effort was made by the litigants to effect a sale of the properties. One offer was. received, but the potential buyer was unable to obtain the proper financing. Thereafter,. *921 no sale of the properties occurred for reasons which we shall enumerate hereinafter.
On December 18, 1960, defendant, Joseph D. Duvigneaud, personally took possession of the dwelling located in 1417 Poinsetta Drive, and in February of the following year Harry J. Duvigneaud, Jr., and his mother moved into the other house in 1412 Poinsetta Drive. On December 28, 1960, Harry Duvigneaud mortgaged each house for $17,400.00 through the Third District Homestead Association. Then on March 2, 1961, one of the houses was sold to Joseph D. Duvigneaud, who assumed the homestead’s mortgage.
Subsequently, defendants proceeded to place various subordinate mortgages on the properties,[1] with the result that the mortgage indebtedness thereon far exceeded the value thereof. As a consequence, an offer to purchase one of the houses for $22,800.00 was rejected because the subordinate mortgage holder would not release the property from the mortgage indebtedness.
The plaintiff offered sufficient evidence to ■clearly reveal that the value of the properties in 1960 was in excess of $46,000.00.[2] This amount was accepted by the trial court as the value of the property, and after deducting the cost of the land,[3] the cost of constructing the houses,[4] and the contractual interest of 6% up to December of I960,[5] the court concluded that a net profit of $5,312.46 was realized from the transaction, one-half of which was due and owing to the plaintiff.
Plaintiff, on appeal, insists that the trial court was correct in finding that the transaction was a joint venture and that it was entitled to one-half of the profit resulting therefrom. The defendants, on the other hand, deny that a joint venture existed. They assert that the plaintiff was simply engaged to erect two dwellings for which it would receive, in payment for its services, one-half of any profit from the sale thereof, and since no sale occurred within a reasonable length of time after completion of the houses, there was no profit to divide.
A joint venture has been described as “ * * * a special combination of two or more persons, wherein some specific venture or profit is jointly sought without any actual partnership or corporate designation.” [6] It is well settled that the existence vel non of a joint venture depends on the intention of the parties, either express or implied.[7] We are convinced that there is ample evidence in the record to support the trial court’s finding that the relationship of the parties constituted a joint venture. While it is quite true that there is a building contract in the record, there is also a supplemental agreement which reveals that the parties agreed to divide any profits equally; moreover, it is highly unlikely that the defendants would or could have obtained an agreement from the plaintiff granting them 6% interest on the money invested by them if the transaction was nothing more or less than a building contract. In view of these circumstances, we detect no error in the trial court’s finding that the plaintiff *922 and the defendants were engaged in a joint venture.
It is well settled that joint ventures, like partnerships, which have no definite time limit are terminated at the will of either party.[8] It seems quite clear that when the properties were appropriated by the defendants to their own use, that is, when Harry and Joseph Duvigneaud moved into these dwellings, and encumbered them with excessive mortgages, they clearly manifested an intention to terminate the joint venture. Defendants have endeavored to explain that their actions were motivated by a desire to preserve the properties, in view of the fact that the real estate market at the time was depressed and there was little possibility of selling the property at a profit. We feel, however, that the subsequent failure of the defendants to remove the excessive mortgages and to endeavor to sell the property on a rising market belies this explanation and demonstrates that they chose to bring the joint venture to an end at that time. Thus, we are compelled to conclude that the plaintiff is entitled to recover one-half of the profits of the venture as of that date.
Defendants also argue that in order to determine whether a profit or loss existed, deductions should be made from the appraised value of the property for interest in the amount of $8,208.00, 6% real estate commissions of $2,760.00 and estimated closing costs of $600.00. Suffice it to say that since the properties were appropriated to the use of the defendants so that no sale thereof would probably occur, the money for real estate commissions and closing costs are not recoverable. In addition thereto, the amount of $8,208.00 for interest is excessive in view of the fact that the defendants chose to terminate the joint venture by the appropriation of the property to their own use in December of 1960. Therefore, interest of 6% can only be earned to that date.
 The defendant’s counsel has implied that Joseph D. Duvigneaud should not be made a defendant herein since he was not a party to the contract. However, its counsel, both in brief and in the course of oral argument before this court, conceded that the properties were appropriated by Harry J. Duvigneaud, as president and' majority stockholder of the defendant corporation, and by Joseph D. Duvigneaud, as vice-president thereof, and the corporation was the beneficiary of the contract to the extent of one-half of the profit. The trial court reasoned that the three defendants, in view of their actions herein, were “indistinguishable in law” and therefore awarded judgment against them even though Joseph D. Duvigneaud and Duvig-neaud Investments, Inc., were not parties to the contract. The record fully substantiates the foregoing factual and legal conclusion of the trial court.[9]
Defendants finally contend that the sum of $2,127.54 paid to the plaintiff over and above the contract price for the construction of the houses should be reimbursed to them as an overpayment. However, to reiterate, the record clearly reflects that this payment was voluntarily made after an audit of plaintiff’s records by the defendants and represents the actual cost of construction. In view of our conclusion that the transaction constituted a joint venture and not simply a building contract, there exists no legal reason for reimbursing the defendant for money invested in the venture. ,
*923 The plaintiff has answered the defendants’ appeal and requested the rendition •of a judgment for the fair rental value of •the two properties, occupied by Harry and Joseph Duvigneaud, for the respective periods of 27 and 29 months which amounts to the sum of $4,200.00. We are of the opinion that the joint venture was terminated in December of 1960 by the appropriation of the houses by the defendants, with no ■discernable objection on the part of the plaintiff. Therefore, the plaintiff is only •entitled to recover its share of the profits •as of the date of the appropriation by the ■defendants, and it is not entitled to recover the rental value of the properties which ■occurred thereafter.
For the foregoing reasons the judgment of the lower court is affirmed. The defendants are to pay all costs hereof.
Affirmed.

. On June 5, 1962, a second mortgage was given to Milton Kessler for $10,000.-00 o-n the property located in 1421 Poin-setta Drive; on September 7, 1962, another mortgage to Kessler was executed in the amount of $6,0001)0; and on March 7, 1963, a collateral mortgage was given on these two houses and one other in the amount of $21,815.00.

. The parties introduced into the record appraisals by the Central Appraisal Bureau, Inc., showing that the property in 1421 Poinsetta Drive was valued at $23,-750.00, and the property in 1417 Poin-setta Drive was valued at $22,500.00. These evaluations were closely supported by independent appraisers produced by the plaintiff.

. $10,500.00.

. $29,127.54

. $1,060.00.

. McCann v. Todd, 203 La. 631, 14 So.2d 469.

. Daspit v. Sinclair Refining Co., 199 La. 441, 6 So.2d 341.

. USA-Civil Code, art. 2876(5); Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228.

. LSA-Civil Code, Article 2301 reads as follows:
“He who receives what is not due to him, whether he receives it through error or knowingly, obliges himself to restore it to him from whom he has unduly received it.”