425 So.2d 259 (1982)
FONTENOT & MITCHELL, Plaintiff-Appellee,
v.
ROZAS, MANUEL, FONTENOT & McGEE, Defendant-Appellant.
No. 82-92.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
Rehearing Denied February 4, 1983.
Writ Denied March 18, 1983.
Preston N. Aucoin, Ville Platee, for defendant-appellant.
Tate, Tate & Tate, Paul Tate, Sr., Mamou, for plaintiff-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
DOUCET, Judge.
This appeal arises from a dispute between two law firms as to the distribution of a fee engendered from representation by both law firms of a plaintiff in a personal injury lawsuit. The case was ultimately settled for $1,505,000.00, with the fee generated to the collective attorneys amounting to $464,638.68.
From the inception of the case the law firms had been unable to agree as to how this fee was to be distributed. As a result of this disagreement, the firm of Fontenot & Mitchell sued the firm of Rozas, Manuel, Fontenot & McGee, so that a court could fix *260 the amount of the fee each firm was to receive.
For purposes of clarity, we shall refer to the firms hereafter by the names of the partners who took the most active roles in the litigation; McGee (for the Rozas firm) and Mitchell (for Fontenot & Mitchell).
It is the contention of McGee that the fee should be divided equally between the attorneys involved, or one-sixth to each lawyer. This would mean the McGee firm would receive four-sixths of the fee and Mitchell would receive two-sixths, based on the number of partners in each firm. Mitchell argues that the distribution should be one-half to each firm. The trial court ruled that the distribution of the fee should be one-half to each firm. From that ruling, McGee appeals.
Lonis West was badly injured on April 30, 1977, when the Gruman single-engine airplane he was piloting crashed and burned. Lonis' brother Harry placed Mitchell in charge of the litigation within a day or two after the crash. Shortly thereafter Harry advised Mitchell that he was hiring McGee also, and Mitchell agreed to the joint employment. Subsequently, Linis West entered into a "contract for legal services with the firms of FONTENOT AND MITCHELL and ROZAS, MANUEL, FONTENOT & McGEE". This contract called for the attorneys to be paid "thirty-three and one-third (331/3%) percent of all amounts recovered." Both firms participated actively in the preparation of the case, and the settlement negotiations. As noted, it appears that Mitchell and McGee spearheaded the work. Late in the settlement negotiations, Lonis West advised McGee that he desired that McGee only deal with the insurance company attorney. From the record, it appears that Mr. West perceived that the insurance company was trying to "divide and conquer" the two firms. It is clear that Mr. West did not discharge Mitchell, and in fact continued to consult with him, and Mitchell continued to take an active part in the case even beyond the settlement.
After a thorough study of the files of the two firms and of the evidence adduced at the trial of the matter, the trial court ruled that the case of McCann v. Todd, 203 La. 631, 14 So.2d 469 (1943) stood for the applicable principle of law in this case and apportioned the fee one-half for each firm.
Appellant McGee assigns three specifications of error, the first being that the trial court erred in ruling that quantum meruit was inapplicable to this case, citing in support of his argument DR 2-107(A)(2) of the Code of Professional Responsibility and the case of Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978).
The courts of this state have consistently used quantum meruit to determine what portion of the eventual recovery should be received by an attorney who has been discharged before the conclusion of a case, regardless of the fee arrangement with the client before the discharge. Simon v. Metoyer, 383 So.2d 1321 (La.App. 3rd Cir.1980); Chaisson v. Law Firm of Dragon & Kellner, 335 So.2d 87 (La.App. 3rd Cir. 1976); Schiro v. Perkins, 240 So.2d 920 (La. App. 4th Cir.1970) writ denied; Cabral v. Heitkamp, 252 So.2d 353 (La.App. 4th Cir. 1971). This case is distinguishable from such circumstances, as it is from the Saucier case, supra, which also dealt with a discharged attorney. Here, both firms were involved in the case until after the settlement. Mr. West testified that he had asked that McGee handle the negotiation of the settlement in its last stages but that it was never his intent to discharge Mitchell. Appellant's own evidence indicates that Mitchell was still deeply involved in the case on December 26, 1979, some two months after the actual settlement had been agreed upon, and that Lonis West was in the office of Mitchell on that date for consultation with Mitchell. Since neither firm was discharged at any stage of the proceedings, we agree with the trial court that quantum meruit does not apply.
Turning to the issue of DR 2-107 of the Louisiana Code of Professional Responsibility: *261 DR 2-107 Division of Fees Among Lawyers.
(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
DR 2-107(A)(1)
(1) The client consents to employment of the other lawyer after a ful disclosure that a division of fees will be made.
(2) The division is made in proportion to the services performed and responsibility assumed by each.
(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.
(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.
The trial court found this rule inapposite to the facts of this case. We agree. Disciplinary Rule 2-107 is aimed at full disclosure to the client by his attorney that another lawyer has been associated BY THE LAWYER, and will be sharing in the fees. This rule mandates that the client must agree to the association and further that in such cases the division of the fee must be proportionate to the work performed by each lawyer. As the trial court pointed out in this case, there was a contract; a contract wherein Lonis West, himself, hired two law firms to represent him. That contract was signed May 13, 1977, only thirteen days after the accident, while Mr. West was still in the hospital recovering from his injuries. The contract specifically named the two law firms. Neither McGee nor Mitchell associated the other, as is contemplated by DR 2-107.
The facts also dispose of appellant's assignment of error that Mitchell should not share in any portion of the fee generated after the settlement offer of $1,000,000.00, which was the figure offered when Lonis West decided that McGee should do the negotiating. Had Mitchell been discharged at that point, then perhaps that argument would be persuasive. Since it was clear that Mitchell was not discharged, then that firm must share in the entire fee. McCann v. Todd, supra.
Finally, we deal with appellant's assignment of error that the fee should be divided by "head". This would result in McGee's firm of four lawyers receiving twothirds, while Mitchell's two-lawyer firm would receive one-third of the fee. Appellant cites the McCann case, supra, as authority for this position. The trial court agreed that McCann was controlling, but reached a different conclusion as to the division of the fee. In its written reasons for judgment the trial court quoted extensively from McCann concerning the division of fees among lawyers who undertake jointly to represent a client. The quotations from that decision of the Louisiana Supreme Court consistently point out that in such instances the lawyers are entitled to share equally in the fees obtained from such joint representation. The trial court then succinctly stated the issue:
"The only issue, as this court views the controversy, is whether the fee should be split between the firms as a unit, 50-50, or whether the fee should be distributed by heads, one-sixth to each individual member. There is language in McCann which could possibly be construed to favor a distribution by heads. However, to do so would stretch the clear and unambiguous language of P-1 which was on defendant's form and which McGee filled in. Therein, Lonis West retained the firms of Fontenot and Mitchell, and Rozas, Manuel, Fontenot and McGee. Clearly, he retained the services of two law firms, and not six individuals.[1]
The trial court then ruled that, based on McCann, and applying the contract entered into by the attorneys, that the fee be distributed to the respective firms on the basis of fifty percent each. For reasons assigned hereinabove, we affirm that ruling of the trial court.
During the pendency of this appeal, the contested funds have been placed in interest-bearing *262 savings. We further hold that the interest accrued on these funds is to be divided equally between the two retained law firms.
All costs of this appeal are cast with appellant, Rozas, Manuel, Fontenot & McGee.
AFFIRMED.
NOTES
[1] P-1 refers to the employment contract between Lonis West and the two law firms.