570 So.2d 1175 (1990)
Christopher J. ROY, Plaintiff-Appellant,
v.
Camille F. GRAVEL, Jr., et al., Defendants-Appellees.
No. 89-438.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Rehearing Denied November 5, 1990.
Writ Denied January 18, 1991.
*1177 J. Minos Simon, Lafayette, Christopher Roy, Alexandria, for plaintiff-appellant.
Gold, Weems, Bruser, Sues & Rundell, Amanda Palmer, Alexandria, for defendants-appellees.
Before DOUCET, YELVERTON and KING, JJ.
YELVERTON, Judge.
The litigation from which this appeal arises is between the partners of a law firm, Gravel, Roy & Burnes, which operated in Alexandria, Louisiana, during the decade between 1970 and 1980. The appellants are Christopher J. Roy and Chris J. Roy, a Law Corporation. The defendants (and reconvenors) are Camille F. Gravel and Richard V. Burnes. After their original appellate brief was filed, reciting their original assignments of error, the Roy appellants (Roy) filed an exception of no cause of action in the appellate court, and a supplemental brief in support thereof. The exception of no cause of action is addressed to the reconventional demands of Gravel and Burnes, which in the court below resulted in the judgment now on appeal by the Roy appellants. For the reasons hereinafter explained, we affirm the judgment of the trial court and overrule the exception of no cause of action.

THE APPEAL
This suit was filed on June 4, 1982, and tried over a three day period six years later in July 1988. Roy sued seeking a declaratory judgment that certain written agreements between him and Gravel and Burnes were partnership agreements and were thus terminable at the will of any partner. Gravel and Burnes filed a reconventional demand seeking an accounting, an injunction, specific performance, and other relief.
After a trial, the district court ruled in favor of Gravel and Burnes and against Roy, finding that:
1. The Gravel, Roy and Burnes partnership (GRB) was dissolved as of January 19, 1980.
2. A written dissolution agreement entered into by these three parties is valid, binding and enforceable.
3. Roy and his law corporation must perform in accordance with the dissolution agreement.
4. Gravel is entitled to a judgment against Roy in the amount of $316,696.98, subject to certain credits.
5. Burnes is entitled to a judgment against Roy in the amount of $216,220.19, subject to certain credits.
The judgment further required Roy to account for certain other GRB cases, and directing the manner in which future performance should occur under the dissolution agreement.
Roy subsequently filed a motion for a new trial, along with a motion to recuse the trial judge from hearing the motion for a new trial. Both these motions were denied.
On this appeal Roy contends that the so-called partnership dissolution agreement was actually an agreement establishing a new partnership, terminable at will, and that he terminated it on December 4, 1980, or at the latest, April 1, 1982. From this he contends that after December 4, 1980, or at the latest, April 1, 1982, he has been under no obligation to account to the other partners, and that they are under no obligation to account to him.
The trial judge gave excellent reasons for judgment, which we approve, and we shall adopt portions of those reasons as our own. We begin by adopting the trial judge's explanation of the history leading up to this litigation.
The history leading up to this litigation is as follows. Gravel, Roy and Burnes practiced law as a partnership between 1970 and 1980. The partnership operated according to the terms of oral agreements and understandings between the partners. On January 13, 1980, Roy gave notice to Gravel and Burnes of his intention to withdraw from the partnership. The written agreements now at issue were then drafted to provide the *1178 terms for the orderly dissolution of the partnership property and business. These agreements were signed in March 1980, and were agreed to be retroactive to the date chosen as the termination of the partnership, January 19, 1980. There were some slight amendments to the original agreement, signed in October and December 1980. The physical property of the partnership was distributed and the client case work of the partnership as of January 19, 1980, was divided between the partners with special terms and provisions for the division of the fees and expenses that would be earned from the work on these cases.
Under the terms of the agreement Roy assumed, as his obligation to the partnership, the completion work on some 268 cases, appearing on Exhibit Roy # 1. Gravel and Burnes assumed responsibility for completing the work on "all other matters of the legal partnership". No listing was included showing specifically what case work was to be completed by Gravel and Burnes.
For a period of time, Roy performed in accordance with the agreements, and as the casework assumed by him was completed, the fees paid were duly accounted for under the terms of the agreement. In December 1980, Roy notified Gravel and Burnes that the dissolution agreements were unsatisfactory and that, as a partner, he was terminating the relationship. Roy still continued through 1981 to settle some casework assumed by him and account for the fees paid, pursuant to the terms of the agreement. In September 1981, Roy again wrote Gravel and Burnes and indicated he would no longer handle cases of the former partnership. Roy wrote to Gravel and Burnes again in April 1982 and reiterated his intention to work no further on casework of the former partnership. Following his April 1982 notification, Roy ceased to comply with the terms of the agreement and has taken no further action to conclude the cases provided for in the agreement or to deposit any fees paid under the terms of the agreement.
Shortly after this, on June 4, 1982, Roy commenced the present litigation by filing a petition seeking a declaratory judgment interpreting the dissolution agreement. As mentioned in the trial court's explanation above, there were actually four written dissolution agreements, but only the first is important to the issues involved in this case. Before returning to the trial court's reasons for judgment, we will describe the dissolution agreement.
The agreement is styled: PARTIAL AGREEMENT REGARDING DISSOLUTION OF GRAVEL, ROY & BURNES, so styled because it was limited, in their language, to an: AGREEMENT WITH RESPECT TO (A) ACCOUNTS RECEIVABLE, (B) WORK RESPONSIBILITY FOR CLIENTS' CASES, AND (C) DIVISION OF FEES FROM CLIENTS' CASES. The parties were the three partners, the agreement referring to them by their first names.
Under the heading: PURPOSE OF AGREEMENT, the parties recited that the date of the termination of the law partnership was fixed as of the close of the business day of January 19, 1980, and that:
Accordingly, the purpose of this agreement is to govern among the contracting parties with respect to the collection of the accounts receivable of the law partnership, the division of the work responsibility of existing clients' cases, and the division of the fees thereby generated among the partners, all with respect to cases, engagements and services entered into by them or their associates prior to January 20, 1980.
The Dissolution Agreement went on to recognize that the three partners:
[E]ach have a financial interest in all of the cases of the clients of Gravel, Roy & Burnes as of January 19, 1980, regardless of which attorney completes the legal work in connection with the handling of the case. This agreement similarly recognizes that Camille, Chris and Richard each has a responsibility for the completion *1179 of the legal work in connection with each of those cases.
The agreement then states:
It is agreed that whichever attorney in the law firm of Gravel, Roy & Burnes was handling a case as of January 19, 1980, will continue to handle the case and perform the legal services in that case until its conclusion. All money received as fees from the cases, except for 30% of the fee if it is handled by an associate of the former law firm of Gravel, Roy & Burnes or any associate of its successor firm, Gravel, Burnes & Robertson, will be paid into a bank account and fund established by Camille, Chris and Richard. Settlements, however, and trust funds will be handled through a trust account in the same manner as was handled in the Gravel, Roy & Burnes Trust Account during the existence of the partnership.
Under the dissolution agreement Roy expressly undertook primary responsibility for completing work on 268 specific GRB clients' cases. Gravel and Burnes took primary responsibility for completing work on the remainder of GRB clients' cases. The testimony at trial indicated that these latter numbered in excess of one thousand.
We return at this point to the trial court's reasons for judgment:
Roy alleges that the dissolution agreement was simply the establishment of an `interim partnership', formed to carry out the dissolution of the partnership affairs and was not a binding contract or agreement, or that in the alternative the agreement established an `inadvertent partnership' was not a binding contract or agreement. Roy also alleges that the `interim partnership' or the `inadvertent partnership' was therefore subject to the Louisiana law on partnership and was terminable at will by any of the partners. Roy has alleged that his notification on April 1, 1982, to Gravel and Burnes of his intention to terminate the `interim' or `inadvertent' partnership, did in fact dissolve the partnership and he is no longer bound by the terms of the dissolution agreements.
After reviewing all the evidence and the law pertinent to this issue, this Court is of the opinion that termination of the original partnership entity of Gravel, Roy and Burnes, was begun by Roy upon his notification on January 13, 1980. The pertinent Louisiana partnership law regarding withdrawals from a partnership that was in effect at the time of the termination, was found in Stone v. Stone, 292 So.2d 686 (La.1974), where the Court stated:
`If a partnership has been constituted without a term, a partner may withdraw from the partnership without the consent of his partners.'
The partnership code which became effective January 1, 1981, contains a codification of the Stone rule under LSA-C.C. Art. 2822. This rule fully establishes that Roy, as a partner in a partnership without a term, was entitled to and did in fact terminate the partnership by giving reasonable notice to the other partners. This Court concludes that the effective date of the termination is the close of the business day on January 19, 1980, as evidenced by and agreed to by the partners in their dissolution agreement of which Roy was a party.
This Court has concluded after reviewing the evidence and applicable law that the four dissolution agreements entered into by the former partners constitute a `private settlement' of Gravel, Roy and Burnes business affairs and in no way do the contracts establish an `interim' or `inadvertent' partnership, terminable at will....
Although the dissolution agreements do contain several of the essential elements that Louisiana law requires in finding that an `inadvertent' partnership has been formed, there is one very essential element that is missingintent to form a business relationship. In fact Roy, Gravel and Burnes were attempting to do exactly the oppositeintent to dissolve a business relationship. This `dissolution agreement' contained several of the same terms that Gravel, Roy and Burnes had conducted the partnership business under, but all three parties *1180 could have disagreed to these and contracted to change these. The partners all consented to the terms and signed this `private settlement' and their contractual obligations would have expired at the completion of all casework and division of assets existing of their former partnership.
Generally, an action is not maintainable between partners with respect to partnership transactions unless there has been an accounting or settlement of the partnership affairs, Jeffries v. Moore, 219 La. 692, 53 So.2d 898 (1951). We agree with the Court in Douglas v. Thomas, 489 So.2d 449 (La.App. 4th Cir. 1986) which held that one exception to this rule is that a:
`Private settlement and accounting of partnership affairs is binding on parties consenting thereto.'
and
`Partners may sue each other upon obligations arising from a private settlement agreement.'
These agreements were made and signed after Roy's notice of termination in December 1980, and were signed in March 1981 and constitute a `private settlement'. The dissolution agreements make no mention of any time or method of termination. LSA-C.C. Art. 1983 states:
`Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law.'
There has been no consent of the parties involved here to dissolve the agreement and the evidence introduced has proven no legal grounds for the Court to dissolve the agreements. Thus the partners involved in litigation here are entitled to maintain an action between each other with respect to the `private settlement'.
We also agree with the Court in Quinn-L Corporation v. Elkins, 519 So.2d 1164 (La.App. 1st Cir.1987) where it stated:
`Legal [a]greements have effect of law upon the parties, and as they bind themselves, parties shall be held to a full performance on obligations flowing therefrom.'
Thus, the dissolution agreements are not terminable at will by a former partner. It appears from the language in the agreement that the only way for the agreement to cease to be effective is when all casework that was the property of Gravel, Roy and Burnes at the close of business on January 19, 1980, has been completed and the fees divided according to the terms of the agreement....
Therefore, this Court concludes that the dissolution agreements are valid, enforceable and not terminable at Roy's will. Roy, Gravel and Burnes are still bound by the terms of the four agreements and must comply with them. Roy is liable to Gravel and Burnes for their proportionate share of fees and expenses on the Gravel, Roy and Burnes cases on which Roy agreed to complete the casework as follows: (1) in their proportionate share of fees and expenses which Roy has already collected, upon the rendition of the judgment in this case; (2) in their proportionate share of fees due under any annuities and structured settlements as Roy receives such payments; (3) in interest beginning to run on the date Roy received such fees and expenses and accruing at the legal rate in effect on the date Roy received them; (4) in their proportionate share of fees and expenses (if any) for cases for which Roy has not yet accounted. Roy is entitled to a credit for any amounts he has paid thus far.
Gravel and Burnes are liable to Roy, in the same manner, for his proportionate share of fees and expenses on Gravel, Roy and Burnes cases, on which they agreed to complete the casework at the time of dissolution and must provide Roy with a list of all these cases as of January 19, 1980. Gravel and Burnes are also entitled to receive a credit for any amounts they have paid thus far. Payments by all parties are to be made according *1181 to the terms and conditions of the four agreements.
IT IS THEREFORE the judgment of this Court that plaintiff, Christopher J. Roy, is hereby denied a declaratory judgment that the dissolution agreements created a partnership terminable at will. IT IS ALSO the judgment of this Court that the plaintiffs-in-reconvention, Camille F. Gravel, Jr. and Richard V. Burnes, are hereby awarded the payment of all fees and expenses, present and future, due them by Christopher J. Roy pursuant to the terms of the dissolution agreements the parties contracted to and to judgment that Christopher J. Roy must comply with all the terms of the agreement.
The rights of all parties are reserved to request liquidation and to require an accounting to establish a detailed list of the partnership assets and liabilities, including casework, as of January 19, 1980; the assignment of these pursuant to the dissolution agreements, and any payments that have been made pursuant to the dissolution agreements. All costs of these proceedings are to be paid from partnership assets following liquidation. Attorney for Camille F. Gravel, Jr. and Richard V. Burnes is to prepare a judgment in accordance with these reasons and present it for signing.
JUDGMENT RENDERED this 7 day of October, 1988, in Alexandria, Louisiana.
In their appellate brief before this court the appellants declare that their basic argument is that the instrument by which the oral partnership was terminated was the creation of an inadvertent partnership without a specific time for termination, thus was terminable at will provided due notice was given to the other partners.
As stated earlier, we affirm the conclusions of the trial court. The dissolution agreement was just what the parties called it, a dissolution agreement. In it they recognized that their former partnership had terminated at the close of the business day of January 19, 1980. The dissolution agreement was a detailed agreement between the three of them to govern the winding down of the affairs of the partnership.
A private settlement and accounting of partnership affairs is binding on the parties consenting thereto. Douglas v. Thomas, 489 So.2d 449 (La.App. 4th Cir. 1986). Contracts have the effect of law for the parties. La.C.C. art. 1983. Contracts must be performed in good faith. Id.
The appellants further argue that even if the agreement was not a new partnership agreement, but a dissolution agreement, it nevertheless has no termination date and under the law presently codified in La.C.C. art. 2024, it may be terminated at the will of any party by giving proper notice. We reject this argument because the dissolution agreement is not one without a specified duration. Its duration is necessarily coterminus with that of the fictional existence of the partnership, GRB. This court has previously stated:
A dissolved partnership maintains a fictional existence with respect to its past transactions and existing assets, until all of its affairs are wound up and completed. This fictional existence permits the partnership to liquidate its affairs, perform existing contracts, collect its debts, pay its obligations and distribute its assets according to the partnership agreement.
Edco Properties v. Landry, 371 So.2d 1367, 1373-1374 (La.App. 3rd Cir.1979), writ denied, 375 So.2d 945 (La.1979). This rule was continued in La.C.C. art. 2834, adopted in 1980 to become effective January 1, 1981: "A partnership retains it juridical personality for the purpose of liquidation." Thus, the partnership, GRB, continues to exist (even to this day apparently) and it does not go out of existence until all of its affairs are wound up. The dissolution agreement has a temporal existence exactly the same as that of the partnership.
The appellants have raised a number of other assignments of error, which we will treat by way of memorandum opinion, giving our resolution of the issue and a brief statement of our reasons, in accordance *1182 with Rule 2-16, Uniform RulesCourts of Appeal.
Appellants complain that it was error for the trial court to deny their motion to sever the main demand and the reconventional demand, in order to allow the reconventional demand to be tried by a jury. It was appellants' position that the reconventional demand contained a claim for damages that could be tried by a jury. At the hearing on the motion, the reconvenors announced that they would not proceed on their damage claim, but only on their accounting demands. The trial judge thereupon denied the demand for a partial jury trial. Aside from the fact that the appellants have failed to cite any authority that might support their right to make an ex parte demand for trial by jury of less than all issues in the case, the resolution of this assignment of error can be put at rest by a simple observation that there is no right to a jury trial in a suit involving the liquidation of a partnership. Ashley v. Welcker, 522 So.2d 172 (La.App. 4th Cir. 1988).
Roy complains that there is an inconsistency between the trial court's written and its formal judgment. The argument is that the money judgments awarded to Gravel and Burnes were "damages", and that the trial court in reasons for judgment made no award of damages. We find no inconsistency. The judgments were in response to an accounting revealed in the evidence, and reconvenors' rights were recognized in the reasons for judgment.
Another assignment of error is the overruling of the plaintiffs' exception of nonjoinder of indispensable parties. The indispensable parties are claimed to be the lawyers who joined Gravel and Burnes after the dissolution of GRB. This is not so. There were only three indispensable parties to this law suit: Roy, Gravel and Burnes.
It is argued that it was error for the trial court to apply the Civil Code articles on partnership that went into effect January 1, 1981, rather than the law as it stood prior to that time. The appellants' brief does not tell us in what particular the trial judge applied the wrong law. We find that the trial court applied the correct substantive law to the case.
The allowance of interest on the reimbursement awards to Gravel and Burnes, running from the dates Roy received the fees and expense reimbursements, is cited as error. We find that the trial court's award of interest was the result of a proper application of C.C. arts. 2000 and 2924, and was not error.
While recognizing the general rule that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness (Rule 3.7, Rules of Professional Conduct), Roy seeks to invoke the exception, (Rule 3.7(a)(3)), that his disqualification worked a substantial hardship on the client (his law corporation). Christopher J. Roy complains that it was an abuse of discretion for the trial court to fail to permit him to represent Chris J. Roy (a law corporation) at the trial. For his side, Roy individually was the most important witness in the case. We find no abuse of discretion in the trial court's refusal to allow him to represent himself.
The last two assignments of error can be discussed together. The first is the failure of the hearing judge, on a motion to recuse the trial judge, to recuse the trial judge from hearing a motion for a new trial. The second is the failure of the trial judge to grant a new trial. We find no merit to either of these assignments. Defendants' counsel, at the beginning of trial, gave the trial judge a collection of exhibits, for his handy reference, the admissibility of which had been agreed upon at pretrial conferences. This collection was bound under a cover. Although the plaintiffs' counsel had copies of the same exhibits, counsel for defendants did not give to opposing counsel an identically bound copy, with a like cover, of these exhibits. After trial and after learning that the trial court had this bound copy of the exhibits, plaintiffs sought to recuse the trial judge from hearing the motion for a new trial, on the ground that the trial judge had been subject to improper influence by improper communications *1183 and was too prejudiced to be fair. A judge from an adjoining district heard the motion to recuse, and denied it. Thereupon, the trial judge resumed the bench and denied the motion for a new trial. After a careful consideration of the facts of the case, the innocuous contents of the "bench book" (the collection of exhibits), and the circumstances, we perceive no error in the denial of the motion to recuse, nor is there error in the subsequent denial of the motion for a new trial.
Although our decision as to these assignments of error is expressed in the form of a memorandum opinion, our decision is based upon a careful reading of the record, and a careful consideration of the appellate briefs and the applicable law.

THE EXCEPTION OF NO CAUSE OF ACTION
An exception of no cause of action, addressed to the reconventional demand of the defendants, Gravel and Burnes, was filed by the plaintiffs, Roy and his law corporation, during the pendency of this appeal. We are authorized to consider this peremptory exception, even though filed for the first time in this court, if proof of the ground of the exception appears of record. La.C.C.P. art. 2163. The ground of the exception, as argued by the exceptors, is the content of the dissolution agreement.
As stated earlier, the answer and reconventional demand of Gravel and Burnes alleged that the dissolution agreement was valid and enforceable and that the Roys had repeatedly breached it. The exception of no cause of action states that the following facts appear of record: The law partnership of Gravel, Roy and Burnes terminated on January 19, 1980; there were certain partnership agreements which entitled Gravel and Burns to a share of fees earned after that date in cases formerly handled by the partnership; Gravel and Burnes have a proprietary interest in the cases formerly handled by the partnership, which are assets of that terminated partnership; and the agreements required Roy to handle to conclusion the partnership cases.
Roy claims that the dissolution agreement had an unlawful cause. The exception declares that if the agreement creates a proprietary interest on behalf of the parties in the cause of action or subject matter of litigation, and restricts the right of the parties to practice law after the termination of the partnership relationship, and effects a division of fees between attorneys who are not in the same law firm without the division being made in proportion to services performed and without the clients being advised of the participation of the parties involved and given a chance to object, results are produced that are prohibited by law and reprobated by public policy. For this reason, according to Roy, the dissolution agreement is invalid and unenforceable and should be declared null and void.
The argument supporting this exception runs something like this: A partnership and the partners are separate beings. The partners may terminate a partnership by agreement between them. If this is done, the authority of the partners to act for the partnership ceases. Upon the termination of the partnership in this case, GRB, its property (i.e. its cases being handled for its clients) could not go to the partners, because that would have resulted in the acquisition by the partners of a proprietary interest in the cases, which is prohibited. Since the now demised juridical person known as GRB likewise never had, or could acquire, a proprietary interest in the cases, the contingent fee contracts with the terminated legal entity were dissolved by operation of law. This being the case, neither the partnership nor its partners had any further interest in the attorney's fees in the case files. The clients were without lawyers, and new attorney-client relationships would have to be created. The foregoing argument is said to result from application of the Louisiana Rules of Professional Conduct, particularly Rule 1.8(j), which prohibits a lawyer from acquiring a proprietary interest in the cause of action or subject matter of litigation of his client.
*1184 The exceptors buttress this argument with the proposition that when GRB terminated it was as if a lawyer had died. They reason to this from the principles of mandate, pointing out that a mandate is terminated by operation of law upon the death of the principal or agent. Taking into account that the rights and obligations arising from contingent fee contracts, being personal, are neither heritable nor assignable, the exceptors venture that these obligations expired by operation of law upon the demise of GRB.
Finally, it is contended that the dissolution agreement is a prohibited contract because it has a forbidden cause. This is so, according to the exceptors' argument, not only because of the creation of a proprietary interest as discussed above, in violation of the Rules of Professional Conduct, but also because it restricts the right of Roy and his corporation to practice law after the termination of the partnership, in violation of Rule 5.6(a) & (b) of the Rules of Professional Conduct. Also, it effects a division of fees between the parties who are not in the same law firm, without the division being made in proportion to the services performed by each party involved, and without the clients being advised of the participation of all the parties involved and given a chance to object thereto, a suggested violation of Rule 1.5(e)(1) & (2) of the Rules of Professional Conduct.
In support of these arguments, the exceptors have cited a number of cases. We have read those cases, and, for the most part, they say exactly what exceptors attribute to them, and support the legal propositions for which they are offered. We find that none of the cited cases, however, are applicable to the present case, and we overrule the exception of no cause of action for the following reasons.
Exceptors' conclusions are based on a false premise, and that is that the partnership terminated for all purposes on January 19, 1980. As we observed earlier in this opinion, citing and quoting from Edco Properties v. Landry, a dissolved partnership maintains a fictional existence until all of its affairs are wound up and completed. Accordingly, with respect to every incomplete case file, which is what this litigation is all about, the partnership GRB is still very much in existence. Nor is it correct to analogize the termination of a partnership to the death of an individual partner. No attorney has died, and the partnership has not died. A partnership retains its juridical personality or "life" for purposes of liquidation.
Art. 2834. Liquidation of the partnership
In the absence of a contrary agreement, a partnership is liquidated in the same manner and according to the same rules that govern the liquidation of corporations.
A partnership retains it juridical personality for the purpose of liquidation.
Art. 2828. Continuation for liquidation; sole proprietorship
When a partnership terminates, the business of the partnership ends except for purposes of liquidation.
If a partnership terminates because its membership is reduced to one person, that person is not bound to liquidate the partnership and may continue the business as a sole proprietor. If the person elects to continue the business, his former partners are entitled to amounts equal to the value of their shares as of time the partnership terminated, and they have the right to demand security for the payment of partnership debts.
The business of GRB was the delivery of legal services. Its contractual relations with its clients did not end or terminate upon termination of the partnership.
Art. 2830. Effects of termination; authority of partners
When a partnership terminates, the authority of the partners to act for it ceases, except with regard to acts necessary to liquidate its affairs.

. . . . .
Comment (b) to this article reads
The activities of liquidation include the concluding of business transactions, the realization of assets, the paying of creditors, *1185 and the division of net assets among the partners.
The performance of a contingent fee contract with a client is a business transaction. The contingent fee contracts pending at the time of termination continued to be partnership business after dissolution. These contracts were not, as contended by exceptors, dissolved. This kind of injustice resulting to clients of dissolving partnerships is unthinkable.
Based on the above observations and the basic principles of partnership law herein mentioned, the assertion that the dissolution agreement creates a proprietary interest in the subject matter of litigation is unfounded. The appellants do not claim that the contingency fee contracts when entered into were in violation of the Code of Professional Responsibility (which was in effect at the date of the dissolution agreement). If the contracts were not in violation at the time they were entered into, they did not become in violation merely because the partnership terminated because, as we have repeatedly said, GRB retained its juridical personality for purposes of winding up its affairs and concluding its partnership activities, including these contingency fee contracts.
By the same token, the termination of GRB had no effect on the right of the client to discharge GRB and get another lawyer. That right existed with equal force after the termination of the partnership as it did before.
With these things in mind, we fail to see how it can be said that the termination of the partnership agreement somehow restricted the right of any partner to practice law. The evidence discloses that the cases assigned to appellants under the dissolution agreement were the same cases Roy had been handling before the partnership was terminated.
Finally, the provisions of the dissolution agreement which allocate fees generated from GRB contingency fee contracts do not violate Rule 1.5 of the Rules of Professional Conduct. This rule is aimed at full disclosure to the client by his attorney that another lawyer has been associated by the lawyer, and will be sharing in the fees. Fontenot & Mitchell v. Rozas, Manuel, etc., 425 So.2d 259 (La.App. 3rd Cir.1982), writ denied, 432 So.2d 268 (La.1983). This rule mandates that the client must agree to the association and further that in such cases the division of the fee must be proportionate to the work performed by each lawyer. Id. This rule, now Rule 1.5, formerly Disciplinary Rule 2-107, was not violated in the present case. The contingency fee contracts were signed by the client and the law firm of GRB. The client knew that his case would be handled by one of the partners in the law firm, and therefore agreed to allow the law firm to split fees however the partners saw fit. As to each incomplete case file, GRB continues its existence.
The peremptory exception of no cause of action is overruled. The dissolution agreement does not have an unlawful cause.
For the above reasons, the judgment of the trial court is affirmed, and the exception of no cause of action filed in this court is overruled. Appellants will pay the costs of this appeal.
JUDGMENT OF THE TRIAL COURT AFFIRMED; EXCEPTION OF NO CAUSE OF ACTION OVERRULED.

ON MOTION FOR REHEARING, AND ON THE PEREMPTORY EXCEPTION OF INDISPENSABLE PARTIES
PER CURIAM.
The motion for rehearing is denied.
The pleading designated Peremptory Exception of Indispensable Parties, filed in this court following our decision on the appeal, is overruled. Plaintiffs-Exceptors assert that the partnership, GRB, was an indispensable party to this litigation, and that all of the partnership's clients were likewise indispensable parties to this litigation. We hold that the partnership and the clients were not indispensable parties to this litigation.