KNOLL, Judge.
This appeal concerns the allocation of attorney’s fees between two sets of attorneys in a personal injury action who represented the Pitts family under a contingency fee contract.
The law firm of Keaty and Keaty and its individual partners, Robert Keaty and Thomas Keaty (hereafter Keaty & Keaty), appeal the judgment of the trial court which awarded James H. Brown and J. *512 Robert Wooley (hereafter Brown & Woo-ley) attorney’s fees of $155,575.17. In making this award the trial court determined that 50% of the attorney’s fee should be awarded to Keaty & Keaty and 50% should be awarded to Brown & Wooley, since there was no written fee arrangement between the two sets of attorneys.
Keaty & Keaty contend on appeal that the trial court’s equal allocation of attorney’s fees was clearly erroneous.
FACTS
The learned trial judge handed down written reasons for judgment which fully set forth the facts, as follows:
“Ray Pitts, Jr. was severely injured on June 29, 1984 as he was rendering assistance to the driver of a disabled vehicle. His injuries consisted of a traumatic above the knee amputation of his right leg_ Mr. Pitts, Sr., acting in the interest of his nineteen year old son, ‘shopped’ the case for an attorney who would give him the best contingent fee contract and operate under the conditions he demanded.
James H. Brown, then Secretary of State of the State of Louisiana, together with a former law partner and Deputy Secretary of State, J. Robert Wooley filed the initial pleadings, and began to investigate the case and prepare for trial. Obviously, because of the restraints placed upon both Brown and Wooley by the Secretary of State’s Office and because Mr. Brown planned on and did, in fact, run for governor of the State of Louisiana, the firm of Keaty and Keaty was associated and subsequently became Counsel of record. Prior to the retaining of Keaty and Keaty by Mr. Pitts, he personally guaranteed Mr. Wooley and by inference, Mr. Brown, a fee of one hundred thousand dollars ($100,000.00) by letter dated November 19, 1984 ... which was an addendum to the letter of November 18, 1984 ...
Over the next year and a half Mr. Pitts negotiated with Mr. Wooley and Keaty and Keaty. An agreement was reached on approximately April 14, 1986.
On that date, an employment contract ... was executed by Ray Pitts, Rena Pitts, and Ray Pitts, Jr. and employing Brown, Wooley and Keaty and Keaty. On April 16th, Jim Brown and Robert Wooley executed a reimbursement of expense agreement. On April 14th, a release agreement was executed by Ray Pitts, Rena Pitts and Ray Pitts, Jr. authorizing their attorneys to obtain certain information as set forth more fully in the agreement. On May 1, 1986 Brown and Wooley executed an assignment to Keaty and Keaty assigning all rights, title and interest in the aforementioned employment contract to Keaty and Keaty.
The Pitts wanted to obtain the best possible representation for the least possible cost. Based on their trial testimony and the written exhibits they had no intention of paying the expenses of litigation if they had to pay thirty percent (30%) attorneys’ fee. Likewise, the law firm of Keaty and Keaty had no intention of paying the litigation expenses from their portion of the contingent fee contract. Brown and Wooley wanted to hold the deal together and were willing to make the allowances in order to see that Keaty and Keaty would represent the Pitts family, and that the Pitts family would allow Keaty and Keaty to represent them. Whether or not Keaty and Keaty actually knew or had personal knowledge of the reimbursement agreement at the time it was confected or during the course of the trial or any time in between is of no moment. The fact is the law firm of Keaty and Keaty would not accept a fee agreement wherein they were to pay such expenses. On the other hand, it is just as apparent Ray and Rena Pitts would not accept a fee agreement to pay thirty percent (30%) attorney fees unless there was a stipulation that the attorneys would pay the expenses. It was left to Mr. Wooley with the tacit consent of Mr. Brown to make the arrangements which held the deal together. All parties considered the value of this law suit to be in the millions. The fact that a verdict of ‘only’ seven hundred sixty-one thousand dollars ($761,000.00) *513 was rendered precipitated the attorney fee and cost disagreement.
* * * * * *
There exists no written agreement between the two firms except for the assignment of all of the rights and interest in the lawsuit by Brown and Wooley. Clearly, one of the reasons this was done was to avoid any criticism of Mr. Brown during his candidacy for governor. Certainly, equity would dictate that Brown and Wooley receive a fee. They initially represented the Pitts family and actually filed the lawsuit. They performed many pre-trial functions before Keaty and Keaty were retained. They introduced Keaty and Keaty to the Pitts family and referred the case to them. Mr. Wooley appeared at virtually every pre-trial motion and continued to perform other pretrial functions. Mr. Wooley appeared at the trial of this matter and was present each day. Brown and Wooley continued as counsel and to this day continue to have almost daily contact with the Pitts as a result of this case.
On the other hand, the Keaty firm has been very active in this matter also. Once they were retained as counsel they enlisted the services of many expert witnesses and began intense preparation for trial. Both Robert and Thomas Keaty appeared at virtually every pre-trial motion and conference. They, along with at least two other associates of their law firm appeared for the trial of this matter and were present each day. Robert Keaty conducted the entire trial, examining all witnesses on direct and cross examination as well as making opening and closing arguments. Keaty and Keaty prepared the appellate briefs and submitted same to the Court before they were dismissed as counsel of record. Keaty and Keaty suggest Brown and Wooley should receive an attorneys fee and that they pay all the expenses of litigation as they agreed. On the other hand, Brown and Wooley suggest a similar division of the fees but suggest that Keaty and Keaty absorb a considerable amount of the expenses as they appear to be excessive. Keaty and Keaty suggest they receive a greater fee because they advanced all costs and did the ‘lion’s share’ of the trial preparation and presentation. Brown and Wooley counter by saying they procured the case and are entitled to a substantial fee for that fact alone. But, they argue, in addition to referring the case to Keaty and Keaty, they performed substantial legal services themselves. Both agree that Mr. Pitts should absorb all Court costs of the appeal.”
APPORTIONMENT OF ATTORNEY’S FEES
Keaty & Keaty contend that the trial court should have apportioned the attorney’s fees to Brown & Wooley in accordance with the services they performed. In ascertaining that fee, Keaty & Keaty argue that the trial court should have allocated Brown & Wooley’s attorney fee under a quantum meruit analysis, and in accordance with Rule 1.5(a) of the Rules of Professional Conduct.
A trial court’s finding regarding the interpretation of a contract is subject to the manifest error rule. Conoco, Inc. v. Tenneco, Inc., 524 So.2d 1305 (La.App. 3rd Cir.1988), writ denied, 525 So.2d 1048 (La.1988). As an appellate court, we must determine that the trial court was not manifestly erroneous in its assessment of attorney’s fees and that the amount is not excessive in light of the facts of the case. See Desselle v. Moreauville State Bank, 553 So.2d 1067 (La.App. 3rd Cir.1989), writ denied, 558 So.2d 584 (La.1990).
In Fontenot & Mitchell v. Rozas, Manuel, Etc., 425 So.2d 259 (La.App. 3rd Cir.1982), writ denied, 432 So.2d 268 (La.1983), we held that quantum meruit does not apply when attorneys work jointly on a case and there is no side agreement as to their fees. See also Defrancesch v. Hardin, 510 So.2d 42 (La.App. 1st Cir.1987), writ denied, 513 So.2d 819 (La.1987). In the situation where two lawyers or firms execute a single contingency fee contract, neither is discharged, and both are involved in the case through settlement, the single contingency fee is divided equally between *514 the two lawyers or firms. Fontenot & Mitchell, supra.
Keaty & Keaty contend that the rule established in Fontenot & Mitchell is inapplicable because Brown & Wooley assigned their rights in the contingency fee contract to Keaty & Keaty, and because the assignment constitutes a side agreement with respect to fees. We disagree.
Although the trial court found that the assignment was executed, it gave no effect to the agreement. This determination is best evidenced by the fact that the trial court apportioned the attorney’s fees under the contingency fee contract equally between the litigants; such a disposition returns the attorneys to the financial position that existed prior to the confection of the assignment, and recognizes no consideration which would support the contract of assignment. This conclusion is not manifestly erroneous.
The trial testimony shows that the Pitts family wanted Brown & Wooley to handle the personal injury suit because the family had known them for a long period of time. As related by Wooley, the Pitts said from the beginning that Brown & Wooley could associate other attorneys, but because the Pitts trusted Brown & Wooley, they wanted them in the case always and in attendance at all aspects of the litigation. This fact is corroborated by the inclusion of all four attorneys in the contingency fee contract signed by the Pitts and the attorneys two years after the accident in which Ray Pitts, Jr. was injured. In that vein, the record is without contradiction that Wooley was present at the trial of the personal injury matter, and at every hearing prior to trial. Likewise, the record shows that Brown & Wooley maintained contact with the Pitts throughout this litigation, and never withdrew as counsel of record. Furthermore, Brown actively represented the Pitts at the conclusion of his involvement in the gubernatorial race, and handled the appeal through the application of a writ of certiorari to the Louisiana Supreme Court after the Pitts discharged Keaty & Keaty on July 11, 1988.[1]
Under these facts, we find our holding in Fontenot & Mitchell dispositive of the issue presented, and fully supportive of the trial court’s equal apportionment of attorney’s fees. See also McCann v. Todd, 203 La. 631, 14 So.2d 469 (1943). The trial court presided over the pre-trial hearings, the jury trial, and the post-trial motions, and was perhaps the best witness about the relationship of the various parties. On this basis, we cannot say that the trial court’s determination was manifestly erroneous.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Keaty & Keaty.
AFFIRMED.

. As between the Pitts and Brown & Wooley, the trial court found that Brown & Wooley were liable to reimburse them for expenses under a side agreement entered into between them on April 16, 1986. Although we do not reach the merits of this determination and make no comment on this agreement, since Brown & Wooley have not appealed, this factor does not adversely affect our finding that there was a joint venture between Keaty & Keaty and Brown & Wooley. Under a normal contingency fee contract the ultimate liability for the expenses of litigation rests with the client. The relationship between Brown & Wooley and the Pitts on this fact, though relevant between them, is irrelevant to the relationship between Keaty & Keaty and Brown & Wooley. From the continued involvement of Brown & Wooley in the litigation, particularly the close relationship exhibited between the Pitts and Brown & Wooley, it is clear that the parties exhibited a mutual intent to jointly represent the Pitts. Compare Lloyd v. Tritico, 527 So.2d 57 (La.App. 3rd Cir.1988), writ denied, 528 So.2d 154 (La.1988).