| iKLEES, Judge.
The subject of this appeal is a dispute between two attorneys over the sharing of fees earned in their joint representation of the respective plaintiffs, Mr. Thomas and Mrs. Ortego, in these two consolidated actions. Following the ultimate settlement of these cases after approximately eight years *748 of litigation, the attorneys, Paul Katz and Thomas Mull, each filed an intervention seeking from the other his alleged portion of the contingency fees generated by the settlement award. The interventions were tried in the district court for four days, after which the court rendered judgment awarding Mr. Katz forty-five percent (45%) of the total fee in the Thomas case and Mr. Mull twelve and one-half percent (12.5%) of the total fee in the Ortego case. From that judgment, Mr. Mull has appealed. In addition to opposing Mr. Mull’s appeal, Mr. Katz has appealed the trial court’s implied denial of exceptions of res judicata and no cause of action which he had filed in response to Mr. Mull’s intervention.
There are three separate issues to be decided on appeal: (1) the amount of the fee to which Mr. Mull is entitled in the Thomas case; (2) the amount of the fee to which Mr. Katz is entitled in the Ortego case; and (3) whether the exceptions were properly denied.

FACTS:

On September 30, 1986, the barge BJ-54 exploded in the waters of Eloi Bay, injuring crew member Terry Thomas and killing Joseph Arias, son of Zoila Ortego. Paul Katz was initially asked to represent Thomas. The agreed-upon contingency fee was forty percent (40%) if the case went to trial. Because he had little experience in maritime law, Katz asked Thomas Mull, with whom he was then sharing office space, to assist him in the prosecution of the Thomas case. In ^December of 1986, Katz and Mull filed suit on behalf of Thomas against the barge owner in both federal and state courts. During the prosecution of the Thomas case, Katz was asked to represent Zoila Ortego in her wrongful death claim. He agreed to represent Mrs. Ortego for a contingency fee of twenty percent (20%) as a professional courtesy to her son, Richard Arias, who is an attorney. Katz again enlisted Mull to help him, and again filed suit in federal and state court. The federal court actions were consolidated.
Each complaint included a claim for punitive damages under the general maritime law. After evidence was discovered which indicated that the explosion was caused by the intentional overboard discharge of hazardous toxic substances, each of the state court petitions was amended to add a claim for exemplary damages under Louisiana Civil Code article 2315.3. The federal claims proceeded to trial in July of 1988. Prior to the conclusion of the trial, the Thomas case was settled for $725,000.00 by means of a consent judgment. At the insistence of the defendants, the consent judgment included language which required Katz to withdraw from any further representation of Mrs. Ortego. Before agreeing to this condition, Katz consulted Mrs. Ortego, who agreed to allow him to withdraw so as not be to an obstacle to the Thomas settlement. The consent judgment covered all issues then before the federal court, which did not include the issue of exemplary damages under Civil Code article 2315.3. Following the Thomas settlement, the contingency fee was amicably divided between Katz and Mull as per their prior agreement to split the fee.
The Ortego federal court suit ended in a mistrial following jury deadlock on the issue of punitive damages. On December 18,1989, before the case was set for retrial, a consent judgment was entered in favor of Mrs. Orte-go for $165,000.00. Again, the contingency fee was amicably split between Katz and JjjMull, despite the fact that Katz had withdrawn as attorney of record from the Ortego suit over a year before.
Both cases proceeded in state court. In the summer of 1990, the Thomas and Ortego actions were consolidated in state court, and a third attorney, Jim Brodtmann, was brought in by Katz and Mull to act as local counsel. Brodtmann agreed to work for ten percent (10%) of the fees generated in each case, with the understanding that Katz and Mull would split equally the remaining ninety percent (90%).
Both cases were removed to federal court in 1990 and then remanded back. The defendants filed various exceptions, which were denied by the trial court, and the defendants took writs to the appellate and Supreme Court levels, which were also denied. Because the proof of the 2315.3 issue was essentially the same in both eases, the legal briefs *749 and memoranda filed were virtually identical in most instances. The evidence showed that Mr. Katz, although he was no longer an attorney of record in Ortego, took a lead role in prosecuting the consolidated eases during this time period, assisted by Brodtmann. Some of the legal research and writing was done by Mull’s wife, Lorraine, who was an attorney practicing with Mull. Also during this time period, Mull and his wife began spending more and more time in Hawaii, where they bought a home, although they continued to operate their law office in Cov-ington. James Marchand, an attorney who became associated with Mull’s office in 1992, often appeared at depositions and conferences for Mrs. Ortego. The relationship between Katz and Mull gradually deteriorated. Between 1991 and 1993, Katz evidently became disillusioned with what he perceived to be Mull’s lack of work on the consolidated eases. In 1991, he obtained Mr. Thomas’ written permission to fire Mull from the Thomas case whenever Katz felt it was necessary. On February 4,1993, Katz sent Mull a letter asking him to withdraw from representation of Mr. Thomas. Significantly, Katz |4stated in the letter that their fee arrangement for both cases would not be affected by Mull’s withdrawal. Mull refused to withdraw until he received a written discharge from Mr. Thomas, which he did on April 7, 1993. In June 1993, about five months after Mull’s withdrawal from the Thomas case, the defendants filed a petition in federal court to enjoin both state court proceedings. Because Katz and Mull were to be witnesses in the federal injunction proceeding, which was designed to end the state court litigation, it was necessary for the plaintiffs to have other legal counsel in federal court. After consulting with Jim Brodtmann, Katz hired attorney Van Robichaux to represent Thomas in federal court. Katz agreed to give Robichaux twenty-five percent of the contingency fee in the Thomas case. Although Katz had attempted to get Mull’s prior approval to modify the fee arrangement, he could not get Mull to agree to the hiring of Robichaux. In the Ortego case, Mrs. Ortego hired another attorney, Bruce Kingsdorf, to represent her in the federal court injunction proceeding and agreed to pay him separately at a flat hourly rate.
On March 27, 1994, the federal injunction proceeding concluded in a global settlement of $800,000.00, which resolved all causes of action between the plaintiffs and defendants in state and federal court. Mr. Thomas and Mrs. Ortego agreed to split the settlement equally, $400,000.00 to each of them. Mrs. Ortego paid the agreed-upon twenty percent ($80,000.00) to Mull, and Mr. Thomas paid his forty percent ($160,000.00) to Katz. Mull paid Jim Brodtmann his ten percent ($8,000.00) of the Ortego fee. Katz paid twenty-five percent ($40,000.00) of the Thomas fee to Robichaux and ten percent of the remainder ($12,000.00) to Brodtmann, as agreed. However, Katz refused to pay Mull any portion of the Thomas fee, and Mull refused to pay Katz any portion of the Orte-go fee. Each attorney filed an intervention in state court seeking fees from the other. After trial, the lower court found that Katz was entitled to one-half ($36,000.00) of JsMull’s fee in Ortego, but Mull was entitled only to be paid on a quantum meruit basis for his work in Thomas. On that basis, the trial court awarded Mull $20,000.00, or twelve and one-half percent (12.6%) of the total contingency fee in Ortego. This appeal followed.

RESOLUTION OF FEE DISPUTE

Our review of the record reveals that the fee arrangements in these cases, both between the clients and their attorneys and among the attorneys themselves, were generally oral agreements. Although the original fee arrangement between Katz, Mull and Brodtmann in the Thomas case was documented in a September 12, 1988 letter from Katz to Mull, the testimony at trial clearly showed that this arrangement was subsequently modified orally on several occasions. The testimony of Mr. Brodtmann regarding the final fee arrangement between Katz and Mull is particularly convincing because we find Mr. Brodtmann to be a disinterested, and therefore impartial, witness. Brodt-mann testified that his clear understanding was that the fee in the Thomas ease would be distributed as follows: twenty-five percent (25%) to Robichaux, with the remainder be *750 ing split ten percent (10%) to himself and forty-five percent (45%) to each Katz and Mull. According to Brodtmann, the arrangement in Ortego was that he, Brodtmann, would receive ten percent (10%) of the contingency fee, and Katz and Mull would again each get forty-five percent (45%). Significantly, Katz’s testimony agreed with that of Brodtmann. In fact, Katz testified that at the time he discharged Mull from the Thomas case, in February of 1993, Katz fully intended that he would share equally with Mull in whatever contingency fee he eventually received from Thomas, even though he did not expect Mull to do any further work on the case. For this reason, Katz’s February 3, 1993 letter asking Mull to withdraw from the Thomas case states: “Please be assured that our fee arrangement as to both cases will not be affected by this change unless mutually agreed.” At trial, Katz admitted thatjjshe changed his mind about sharing the Thomas fee with Mull only when Mull refused to live up to their agreement to share fees in Ortego. Katz then decided Mull should be paid on a quantum meruit basis.
Mull took the position that once Katz was forced to withdraw from named representation of Mrs. Ortego because of the 1988 consent judgment, Katz was no longer entitled to any fee in Ortego. Nevertheless, one year after Katz’s withdrawal, Mull amicably split with Katz the fee resulting from the December 1989 consent judgment in Ortego. The trial judge found that the subsequent work done by Katz in the Thomas state court proceedings inurred to the benefit of both plaintiffs, and further, that Katz did the majority of the work in the consolidated cases in state court. We see no manifest error in this finding. Moreover, we agree with the trial judge that the existing fee arrangement between Katz and Mull was not altered by Katz’s withdrawal from direct representation of Ortego.
We are not persuaded by Mull’s argument that Katz is not entitled to any further fee because Mrs. Ortego discharged him. Mrs. Ortego testified that she only allowed Katz to withdraw because she did not want to stand in the way of the Thomas settlement. Mull correctly cites Rule of Professional Responsibility 1.5(e), which states that a lawyer shall not divide a fee with another lawyer unless the client has consented to the employment of the other lawyer and the division of fees. However, Mrs. Ortego’s deposition testimony does not indicate that she withdrew her permission for Katz to share in the contingency fee when she allowed him to withdraw. Moreover, Mrs. Or-tego’s understanding as to the fee arrangement between the two lawyers is really not pertinent to this dispute. The Rules of Professional Responsibility are designed primarily to protect clients from unscrupulous attorneys. In the instant case, Mrs. Ortego paid the agreed-upon contingency fee and has no further interest in the outcome of this dispute between the two attorneys. Between Katz and Mull, the governing principle is the nature |7of the agreement or contract between them. We agree with the trial court that the evidence showed this agreement to be for an equal split of the fee in Ortego after Brodtmann received his ten percent (10%). Therefore, we affirm the trial judge’s ruling that Katz is entitled to forty-five percent (45%) of this fee, or $36,000.00.
Turning back to Thomas, the trial court found that although there was an agreement to split fees, Mull was no longer entitled to his share of the fee because he was discharged in April 1993 by the client for cause. The trial judge apparently based this conclusion on jurisprudence holding that an attorney who is discharged for cause prior to the completion of a case should be compensated on the basis of quantum meruit. See Fontenot & Mitchell v. Rozas, Manuel, Etc., 425 So.2d 259, 260 (La.App. 3d Cir.1982), unit denied, 432 So.2d 268 (La.1983) and cases cited therein. Nevertheless, this jurisprudence is not applicable to the instant situation because this is not a dispute between the client and his attorney over fees. The client, Mr. Thomas, has paid the agreed-upon fee and has no further stake in the outcome. Therefore, as in the Ortego case, we find that the distribution of the Thomas fee should be determined by the agreement between the two attorneys. Our task is to determine, from the record, what that agreement was at the time the case ultimately *751 settled. We agree with the trial court that the hiring of Van Robiehaux by Katz to handle the federal injunction proceeding for twenty-five percent (25%) of the fee was reasonable and necessary under the circumstances, even though Mull did not agree to it. A federal magistrate had ruled that Mr. Thomas could not be represented by Katz in the federal proceeding because Katz was to be called as a witness. Therefore, the hiring of another attorney was unavoidable, because if the defendants had succeeded in obtaining the federal injunction, it would have terminated the state court litigation.
In his testimony, Katz himself admitted that after paying Robiehaux and Brodtmann, he intended to split the remainder of the Thomas fee with Mull, and |sthat he did not alter this intention until Mull reneged on his agreement to split the Ortego fee. Katz’s February 3, 1993 letter to Mull is written evidence of this intent. Therefore, we find that Mull’s 1993 discharge did not affect the fee arrangement between the two attorneys. Accordingly, Mull is entitled to forty-five percent (45%) of the Thomas fee that remained after Robiehaux was paid, or $54,000.00. We therefore reverse the trial court on this point.

Denial of Exceptions

Katz also complains that the trial court’s judgment is silent as to his exceptions of res judicata and no cause of action. He contends on appeal that these exceptions should have been maintained because the Joint Motion of Dismissal filed in Thomas specifically dismisses with prejudice the claims of all plaintiffs against all defendants including interventions.
This argument lacks merit. The multi-page “Global Settlement and Release,” which must be read in pari materia with the Joint Motion to Dismiss, clearly states:
This Mutual Release shall not effect the right of any attorney to claim or collect fees and expenses owed by that attorney’s client or former client, or the right of any attorney to claim or collect a share of fees or expenses owed by another attorney or attorney(s) representing or having represented the same client....
We therefore find that the trial court’s implied denial of the exceptions was proper, and affirm that portion of the judgment.
Accordingly, for the reasons given herein, the judgment of the trial court is modified to reflect that Mr. Katz owes Mr. Mull the sum of $54,000.00, rather than $20,000.00, from the Thomas case. The portion of the judgment awarding Mr. Katz $36,000.00 from Mr. Mull’s fee in the Ortego case is affirmed. Offsetting these amounts, we adjudge that Mr. Katz is to pay to Mr. Mull the sum 19of $18,000.00, which reflects the difference between $54,000.00 and $36,000.00. Each party is to pay his own costs of appeal.

AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED.